## COUNTY OF SOMERSET.

(*) HOWE, *in equity, versus* JOSEPH RUSSELL AND JOHN K. RUSSELL.

In cases of exceptions to a master's report on a bill in equity, it belongs to the excepting party to open and close.

It is unusual to allow an amendment to the defendant's answer to a bill of equity.

Such an amendment will not be allowed, if it introduce a new ground of defence, existing and known to the defendant, when his answer was filed.

When the bill, answer and proof, each shows that a deed of conveyance, though absolute in its form, was intended merely to secure a debt or to indemnify against liabilities, it will, in equity, be treated as a mortgage.

A party claiming to hold land under a sale for the payment of state or county taxes, must, in equity as well as at law, prove the facts necessary to establish its validity.

The net avails of timber, taken by a third person, from land under mortgage, must be appropriated toward the extinction of the mortgage, if such taking was with the approbation of the mortgager and of the mortgagee, upon an understanding that such third person should so appropriate the avails.

This rule of appropriation is not affected by the existence of a prior outstanding mortgage upon the land, if the prior mortgagee make no claim that the appropriation be made upon his mortgage.

A master in chancery, commissioned to ascertain the amount due upon an outstanding mortgage of land, has no jurisdiction to adjudicate upon the titles to the estate mortgaged.

The adjudication of a master in chancery, upon facts submitted to him, is presumed to be correct.

In order that such an adjudication should be set aside or reconsidered, for an alleged mistake or an abuse of authority, it must be clearly shown that such wrong existed, and that equity requires its correction.

A master in chancery is not bound to report the evidence upon which his determination was founded.

Errors of computation by a master in chancery may be corrected by the Court, without a recommitment, at any time before the confirmation of his report.

The grantor and the grantee of land by a deed in form of a *warranty,* but by legal intendment merely an equitable mortgage, may, after the discharge of the mortgage, be compelled in equity to release the estate to a person who had derived under the grantor a title legally subordinated only to such mortgage.

BILL IN EQUITY, heard upon bill, answer and proof, and coming up on exceptions to the master's report.

Upon inquiry made, the Court ruled that, in such cases, the opening belongs to the excepting party.

The material parts of the case appear to have been as follows : —

Joseph Russell, in 1835, mortgaged to Edward Smith a large tract of forest land, to secure his promissory notes, which have not yet been given up or canceled ; on which about seven thousand dollars appears to be due.

Afterwards in 1838, he conveyed the same land, together with a farm, on which he then and has ever since resided, to Osgood Sawyer, by a deed in form of a warranty. This deed was intended for security to Sawyer for debts and liabilities as surety and otherwise.

On a former hearing of this suit, the Court decided that the deed to Sawyer must be deemed and treated as a mortgage, and appointed a master to ascertain the amount due upon it.

For several successive years prior to 1844, the forest land was sold for the payment of public taxes, and was conveyed by the purchasers to John K. Russell, one of the defendants, the son of Joseph Russell, the other defendant.

About the years 1844 and 1845, John K. Russell took a large quantity of timber from the forest land. This he did,

with the consent and at the desire of Joseph Russell, and of Sawyer.

Out of the net avails of the timber, John K. Russell furnished to Sawyer money enough to pay the debt and nearly enough to discharge the liabilities, for which the land had been mortgaged to Sawyer, and for meeting the residue of those liabilities Sawyer took from J. K. Russell personal security, and thereupon conveyed to him the farm in 1845.

On the same day (the title under the mortgage made to Edward Smith appearing to be much incumbered by the claims arising under the tax sales,) one Warren, the assignee of that mortgage, transferred it with the mortgage-notes to John K. Russell, for $800. This trade was negotiated wholly by Joseph Russell, and nothing was allowed to Warren, or claimed by him, for the timber taken from the land.

In 1847, this plaintiff, having, in the name of Francis B. Blanchard, recovered a judgment against Joseph Russell, upon a debt due prior to the said conveyance from Joseph Russell to Sawyer, levied the execution and set off upon it to Blanchard the said farm in two pieces, one of which contained about three acres, and Blanchard soon afterwards released and quitclaimed the same to the plaintiff.

The plaintiff, finding his *record title* under the levy, clouded by the warranty deed from Joseph Russell to Sawyer, and by the deed from Sawyer to John K. Russell, both made before his levy, brings this bill against Joseph Russell and John K. Russell, alleging *that* the conveyance from Joseph Russell to Sawyer was made fraudulently with a design, on the part of the grantee as well as of the grantor, to defraud the creditors of Joseph Russell; *that* John K. Russell was well knowing and contributing to that design; and *that* the stumpage of the timber taken from the forest land by John K. Russell, by the suggestion and consent of Sawyer and of Joseph Russell, was more than enough to pay and discharge the mortgage from Joseph Russell to Sawyer, and did in fact pay it. So that the deed from Joseph Russell to Sawyer, being in fraud of creditors, was void; and if not void, it was

but a mortgage, which having been fully paid, has become inoperative.

Wherefore the plaintiff prays that the defendants may be decreed to release and quitclaim to him the land upon which he had levied, and for further relief.

Joseph Russell, in his answer, denies any fraudulent intent in the conveyance to Sawyer; asserts that that conveyance was made to secure Sawyer from liabilities assumed for him, and that he has not been able to discharge said liabilities. He also alleges that he had no title to the three acre piece of land, when set off to Blanchard.

John K. Russell, in his answer, denies all knowledge of, or participation in, any fraudulent design in the conveyance from Joseph Russell to Sawyer, or of Sawyer to himself; asserts that he purchased Sawyer's rights in good faith, and paid for them of his own means; that he purchased in the tax titles to the forest land, having been advised and believing the same to be valid, and considered the timber which he took therefrom to be his own, though he has since heard the validity of that title questioned; that by purchase from Warren he became assignee of the notes and mortgage given to Edward Smith, and that all the stumpage of the timber was insufficient to pay the amount due on that mortgage.

He also alleges that when the Blanchard execution was levied, the three acre piece did not belong to Joseph Russell; that it was a part of the Bray farm, which Bray had conveyed to one Jewett by a mortgage, which this defendant understands to have been foreclosed; that Jewett conveyed it to one Pearson by whom it was sold and conveyed to this defendant. Some other facts pertaining to the title of the three acre piece are stated in the opinion of the Court. The deposition of Pearson shows that Joseph Russell had the right to redeem the Bray farm from Jewett; and that the mortgage has not been foreclosed; and that he purchased the mortgage from Jewett and conveyed to John K. Russell the rights which he took by the deed from Jewett.

The report of the master was, in substance, *that* after

allowing for the yearly rents and profits of the farm, the amount necessary to discharge the Sawyer mortgage would be $1193,13 ; that the profits received by John K. Russell from the timber land mortgaged to Sawyer was $2000, more than the amount paid to the assignee of the Edward Smith mortgage, and to redeem the tax title ; *that* thereupon the defendants contended before him, that no part of this sum should be applied to the Sawyer mortgage, as the timber belonged to John K. Russell under the tax titles, and offered evidence in support of those titles ; *that* this evidence was excluded, the master considering it out of his province to determine upon titles to the real estate ; *that* the defendants offered to prove that the rights of Joseph Russell, when he mortgaged the land to Sawyer, extended only to one sixteenth of the forest tract ; *that* this evidence, for the same reason, and because contradictory to his deed was rejected ; *that* the profits from the timber land ought to be applied, and was by him applied to the Sawyer mortgage, and that therefore nothing remained due upon said mortgage.

The defendants resist the acceptance of the report, and contend that no decree can rightfully be grounded upon it, and they present exceptions, seven in number, which are noticed in the opinion of the Court.

They also move for leave to file amended answers which shall state that prior to Sept. 1837, Joseph Russell had conveyed to sundry persons, by deeds before that time recorded, all his interest in the forest lands on which John K. Russell lumbered, excepting one sixteenth part, and that he acquired no title thereto afterwards, said facts having been omitted in the answers, because deemed immaterial.

*J. S. Abbott,* for the defendants.

There are three acres of the land to which the plaintiff took no rights by his levy, the execution debtor having never owned it. As to that piece, therefore, no decree can be passed.

The farm passed prior to the plaintiff's levy, by the mort-

gage to Sawyer, which has been assigned to John K. Russell, and is yet unpaid and outstanding. The money and security furnished by J. K. Russell to Sawyer, were not in discharge of the mortgage, but were the consideration for which J. K. Russell purchased the land.

There was no propriety in the master's appropriating that money and security to discharge the Sawyer mortgage. To the whole of the timber John K. Russell was entitled as his own property. The land from which he took the timber was his own. He bought it of those who had purchased at the auction sales for taxes. The titles under these sales were valid. The bill itself alleges, that the land was redeemed from two tax sales by Joseph Russell through the agency of John K. Russell. This is an admission of the validity of the taxes and of the sale. But the money paid by John K. Russell, was not to redeem but to purchase for himself the tax titles. These titles are spoken of several times in the answers, as valid titles, and no exception having been taken to them, their validity cannot now be controverted. If not legal and valid, let the plaintiff show the defects.

Again, the timber, if not held by the tax titles, was to be accounted for, not upon the Sawyer mortgage, but upon the earlier mortgage given to Edward Smith. Of that mortgage, and of the debt secured by it, John K. Russell became the purchaser or assignee. To himself then, and to himself alone, was he to account for the timber; to the amount, [over $7000,] due upon that mortgage; but the timber was not of half that value. There was error then in the appropriation of any of that fund to the Sawyer mortgage.

Nor can it be maintained that John K. Russell became party to any arrangement with Sawyer, by which he was bound, in any way, to account to him for the timber. He had no license, no permit, from Sawyer to take the timber, and never agreed to account to him for it.

It was his own money that he advanced to Sawyer, and it was to buy the land of Sawyer, whose title to it was under a warranty deed, though the Court has since decided that it

Howe *v.* Russell.

could operate only as a mortgage. But viewed as a mortgage it is outstanding and in force, and it covers the very land for which the plaintiff is contending.

The counsel then undertook to show that the master's estimation of the rents and profits of the farm was highly erroneous, and also to show that some large errors had been made in his other computations.

Wherefore he submits that the report should be set aside, and another master appointed ; or at least that the case should be recommitted with instructions.

*W. Fessenden,* for the plaintiff.

The motion for leave to file amended answers, is substantially a motion to open the case anew. It is opposed to the practice of all courts of equity, and is without precedent. *Hughes* v. *Bloomer,* 9 Paige, 269.

The object is, confessedly, to introduce a technical and unconscientious defence, to wit, a tax title.

The Court will not open the case for this purpose. *Hartson* v. *Davenport,* 2 Barbour's Ch. Rep. 77.

The case should not be opened for production of testimony, not unknown before publication of testimony. *Robinson* v. *Simpson,* 26 Maine, 11.

The report of the master as to matters of fact will be considered as conclusive. It is like the verdict of a jury. His estimation of the rents and profits cannot be considered as erroneous by this Court, for the Court has not the evidence before it upon which that estimation was based. So also with regard to the amount of the debt due from Joseph Russell to O. Sawyer. *Mason* v. *Crosby & al.* 3 W. & M. 258.

The master acted rightly in rejecting the evidence offered to prove the validity of the tax titles. This evidence should have been offered to the Court, and published with the other testimony in the case. A master is not bound to report the evidence introduced at the hearing before him. Would the Court allow the master to adjudge as to the validity of the tax titles, when his judgment would be conclusive ?

The evidence offered as to the extent of Joseph Russell's interest in the wild lands was properly excluded by the master, for this was in direct contradiction to the allegations in the bill admitted in the answers.

Is any thing due on the mortgage to Sawyer, of whom John K. Russell is the assignee. We say that mortgage has been paid by the rents and profits, and by the timber, cut upon the wild land which are a part of the mortgaged premises. It was cut by John K. Russell as agent of Sawyer the *then* mortgagee, or by the permission of Sawyer, and with his knowledge and consent.

If not acting as *agent*, but only by *consent* of Sawyer, the mortgagee, Sawyer must account for the timber so taken. The principle of equity is this, that if the mortgagee, having the power and right to allow strangers to take profit from the mortgaged premises; if he does so allow them, he does it at his own risk, and it is as if he did it personally; and he is bound to account to the mortgager on the mortgage debt for all value so taken.

Whether Sawyer received the profits or not, he must account for them. But he did actually receive them to the extent of the mortgage debt. *All* J. K. Russell's means were derived from the profits of this timber. These profits were paid over (in part) by J. K. Russell to Sawyer, on September 4, 1845, when Sawyer gave him the deed.

The Court will not presume that J. K. Russell was a trespasser when he went upon the land. All the circumstances show he did it with the consent of Sawyer. If not, he was a trespasser, for the tax titles were not valid. He so confesses in his answer, nor does he offer any proof of their legal execution.

If it is said that Sawyer had no right to receive stumpage, being only owner of an equity of redemption, we say Warren, the holder of the first mortgage, did not claim this stumpage, and so long as he makes no claim, it is the property of the assignee of the mortgager, Sawyer.

Warren is not bound to account for the proceeds. The

cutting was without his knowledge or consent. He has, subsequently, parted with all his interest to J. K. Russell, but this gives J. K. Russell no right to the past stumpage. Warren conveyed to him no right of action. Nothing is said in the assignment with regard to past trespasses.

Might not Sawyer have maintained an action against J. K. Russell for the value of the stumpage? If he had done so, would not the amount recovered by him be applied to extinguish Joseph Russell's mortgage? Why then should it not be so applied when voluntarily paid by J. K. Russell to Sawyer? Why then should it not be so applied, even though it had not been paid over to Sawyer, if the timber was taken with his knowledge and consent?

Sawyer then must account for this timber. If so, the mortgage debt is paid.

It follows then that the land upon which the plaintiff levied is relieved from every sustainable incumbrance. Still, by means of the deed, in form a *warranty,* which, previous to the levy, Joseph Russell gave to Sawyer, there is an *apparent* title, a cloud, which the defendants ought to remove. This they should do by executing to him a release of the land. We therefore submit that the Court will decree that such a release be given.

HOWARD, J. — The defendant Joseph Russell, mortgaged timber land, in 1835, to secure the payment of his notes described in the mortgage, and which are still outstanding. Afterward, in 1838, he conveyed by deed of warranty, the same land together with a farm to Sawyer. We have determined at a former hearing of this case, that the deed last named, though absolute in its terms, constituted a mortgage to the grantee to secure him for sums due, and liabilities assumed for the grantor. It appears, and it is admitted in the argument for the defendants, that the *farm* embraced the two parcels of land claimed by the plaintiff under a levy in 1847. John K. Russell, son of Joseph Russell before mentioned and co-defendant, operated upon the timber land by the request and

intercession of Sawyer, who "urged him to make an effort to redeem," and with the knowledge and approbation of Joseph Russell, and with the implied assent, or without any objection of others, who might be supposed to have been interested as prior mortgagees, or their assignees. The net avails of those operations far exceeded the amount of the indebtedness and liabilities of Joseph Russell, which were secured by his mortgage to Sawyer. Upon receiving a portion of those avails of the lumber from John K. Russell, and his obligation to discharge the remaining liabilities of the father, Sawyer conveyed the *farm* to the son, on Sept. 4, 1845; the grantee having full knowledge of the nature of the title of the grantor, as mortgagee.

The case has been submitted to a master to ascertain the amount due upon this mortgage; and he has reported that it has been wholly paid, and that there is nothing due and secured upon the farm levied upon, and claimed by the plaintiff.

The defendants now "move to amend the answers by stating, that prior to Sept. 1837, Joseph Russell had conveyed to sundry persons, by deeds before that time duly recorded, all his interest in the timber lands, on which John K. Russell lumbered, as set forth in the bill, excepting one sixteenth, and that afterwards he acquired no title thereto, said facts having been omitted because not supposed material." The motion is not supported by evidence of the facts alleged, or by affidavit.

The practice of amending answers is not generally allowable in proceedings in equity in this country or in England. A supplemental answer, though allowable in some cases, will not be allowed to correct an alleged mistake, or supply an omission, upon motion, and where it is not made evident that a mistake exists, or that there has been in fact such omission of material facts. *Wells* v. *Wood*, 10 Ves. 401; *Verney* v. *Macnamara*, 1 Bro. Ch. R. 419; Story's Eq. Pl. § § 896, 905; *Bowen* v. *Cross*, 4 Johns. Ch. 375; *Hughes* v. *Bloomer*, 9 Paige, 269. To allow the amendment proposed, would be

admitting a new ground of defence, existing and known to the defendants when their answers were filed, and proof taken, and which they did not omit to present and rely upon through accident or surprise. The motion is, therefore, denied.

The defendants, in their answers, do not appear to rely on titles to the timber lands derived from sales for taxes ; and as those sales and the titles springing from them, as now assumed in argument, are not supported by evidence, they cannot be regarded as valid. It does not appear that any estate passed to the purchasers, or their assignees, through titles originating in sales for taxes.

On September 4, 1845, the day on which John K. Russell received the conveyance from Sawyer, he took an assignment of the first mortgage of Joseph Russell of the timber lands from Warren, a prior assignee. This transfer was negotiated wholly by the father, and the amount paid by the son did not exceed one eighth of the sum apparently due upon the mortgage. In this sale or transfer, neither Warren, nor his assignors, claimed or required the defendants or Sawyer to account for the previous operations upon the lands. Under that conveyance the defendants cannot legally or equitably retain the avails of those operations, and divert them from the purpose first intended. It is manifest that they were procured in order to redeem the last mortgage ; and they were so appropriated in part at least. Having been derived from the land for that purpose, by the assent of all interested, it is but simple justice to the levying creditor, that the appropriation should not be changed, so as to affect his rights injuriously.

Although it may not be necessary, in this case, to determine the relative rights of the defendants, in respect to the estate, derived from the assignment of the original mortgage by Warren, yet it is not quite apparent that there is a subsisting incumbrance by reason of that mortgage, if it has been purchased by the avails of the operations upon the timber lands, by John K. Russell, by the procurement of his father.

The defendants contend that the second tract described in

the levy, containing three acres, was not the property of the debtor Joseph Russell. It appears however that he was in possession of it, as a part of the *farm*, that he conveyed it to Sawyer, in mortgage, as such, and that Sawyer conveyed the *farm* to John K. Russell, as the same farm conveyed to him by Joseph Russell. The deed from Pearson to John K. Russell, of July 15, 1845, embraces the " Bray lot," containing thirty acres, including this tract of three acres, but it appears that Pearson was, at most, tenant in mortgage only, and that the equity of redemption was in Joseph Russell, by whose request this deed was made to his son. The avails of the lumbering operations referred to, were sufficient to enable John K. Russell to discharge this mortgage, and the mortgage to Sawyer; and he in fact did pay to Pearson about two thirds of the mortgage debt with such avails, directly. And if that mortgage is not fully discharged, which cannot be admitted, still we hold that the defendants are estopped to claim that the *three acres* were not a part of the farm, and subject to the levy. R. S. c. 94, § 1. Equity demands that they should convey to the owner of the farm, all claim of title through the mortgage of Pearson, to that tract. For this will be just to the creditor of Joseph Russell, forced to seek payment by levy, and will work no injustice, or hardship upon either of the defendants.

But they except to the master's report; and the *first* and *third* exceptions are based upon the fact that the master refused to receive evidence of title to the lands described in the bill. The answer to these objections is, that the question of title was not submitted to the master, and he had no jurisdiction, or authority to adjudicate upon that subject.

The second exception is, that the master appropriated the net avails of timber taken by the mortgagee, or by his authority, from some of the lands embraced in the mortgage, to the discharge of the mortgage debt. The course of the master in this respect, was authorized and required by his appointment, and is unexceptionable.

The report of a master in chancery, upon facts submitted

to him will be presumed, *prima facie*, to be true, and will not be reconsidered, or set aside, for an alleged mistake or abuse of authority, unless it be clearly shown, and the correction be required in equity. The burden is on the excepting party, to establish the mistake or misconduct alleged. *Da Costa* v. *Da Costa*, 3 P. Wms. 140, note. It is a sufficient answer to the fourth, fifth and sixth exceptions, that no such mistakes, as are alleged, have been shown. The evidence before the master, on the question of rents and profits, is not stated, nor was it required to be reported by him, and cannot be considered by the Court. But. if it were reported, his conclusions of fact upon the evidence will be upheld until impeached.

The seventh exception refers to a supposed error in the computation by the master, of the sum due 'upon the mortgage, when he regarded it as paid and discharged. But the error assumed, if it existed, would not be material, as the amount of rents and profits would far exceed the sum due upon the mortgage after correcting the alleged mistake. For such an error the report should not be set aside or re-committed. Errors in computation not affecting the result materially, may be corrected at any time, before or after confirmation of the report. 2 Madd. Ch. Pr. 507 ; *Mason* v. *Crosby*, 3 W. & M. 258. The master's report is accepted and confirmed.

The mortgage to Sawyer having been paid, the title of the plaintiff is relieved from incumbrance, and is complete. It has not been deemed necessary, for the disposition of this case, to determine that the conveyance of Joseph Russell to Sawyer was fraudulent, as against creditors of the grantor. It is sufficient for the plaintiff that the conveyance has been proved to have been a mortgage, and that its payment*has been established. ' He is entitled under his prayer for general relief, to a decree, that the conveyance from Joseph Russell to Osgood Sawyer, described in the bill, was a mortgage ; that the same has been fully paid ; and that the defendants release and convey to the plaintiff by deed duly executed, all right, title, interest and claim to the farm described in the bill, and in the levy under which the plaintiff holds, with covenants of

warranty against all claims of all persons, claiming by, through or under them, or either of them. And it is ordered and decreed accordingly with costs for the plaintiff.

SHEPLEY, C. J., and RICE and HATHAWAY, J. J., concurred.