[No. 582.    August 24, 1895.]

## DOLORITAS MARTIN DE CORDOVA et al., Appellants, v. HENRY KORTE et al., Appellees.

Bill of Discovery—Reference to Master—Presumption.—In a proceeding, by bill in equity, against an administrator, for a discovery and accounting, where the entire case was referred to a master, without objections, to take testimony and report his findings of fact and conclusions of law thereon, it will be presumed that the reference was made by consent of all the parties.

Id.—Conflicting Evidence—Findings of Fact by Master—Presumption.—The findings of fact by a master, depending upon the weight of conflicting testimony, are presumptively correct, and are not to be disturbed, unless it clearly appears there has been error or mistake on his part, and any disregard of this rule by the court, acting solely on the master's report, is reversible error.

Id.—Admissibility of Parol Evidence to Prove Partnership Name in Deed.—Parol evidence is admissible to prove that the name of a party, mentioned as grantee in a deed, is a partnership name.

Appeal, from a decree in favor of defendant, from the Fourth Judicial District Court, San Miguel County. Reversed.

The facts are stated in the opinion of the court.

T. B. Catron and J. D. W. Veeder for appellants.

Long & Fort for appellees.

Bantz, J.—This is a suit in chancery brought by Doloritas Martin de Cordova and others, as the natural heirs of Frederick Metzger, against Henry Korte. After the issues were made up, Henry Korte died, and the cause was revived against his heirs and representatives. The bill, briefly stated, avers that Metzger died in Mora county in 1885, possessed of a large real and personal estate, consisting of merchandise, cattle, horses, ranches, and farms; that Metzger, at the time of his death, was in partnership with Korte, under the name of Henry Korte; and that Metzger had made conveyances of all of his property to Korte, which were really intended for the use of the partnership conducted under the name of Henry Korte, and had contributed $100,000 to the firm, which was indebted to him in that sum at the time of his death. The bill further avers that Korte took out letters of administration upon Metzger's estate, and falsely and fraudulently inventoried the property as of the value of only $180, and that he had refused to account for the balance. It is also alleged that complainants are the children of Metzger, an unmarried man, and of one Viviana Martin, an unmarried woman, and that Metzger left surviving him, no other natural children or descendants. A discovery and accounting are prayed, and

that the property of the firm, held in the name of
Henry Korte, to which Metzger's heirs would be enti-
tled, be decreed to complainants, and for general
relief.    The defendant's answer denied all of the
material allegations of the bill, and alleged that Metz-
ger left surviving him one Juana, the wife of Korte, a
natural child of Metzger, by whom she had been
adopted.    The court below, without objection from
either side, referred the whole case to a master, to take
testimony and report his findings of fact and conclu-
sions of. law.    A large amount of testimony was taken,
and a great many witnesses were examined by the
parties.    The principal question of fact seems to have
been in regard to certain conveyances made in June,
1873, by Metzger, to Henry Korte, covering all of his
visible property, real and personal, the consideration
of which, as named, was $18,330 in money and $2,300
in book accounts.    The complainants introduced a
a number of old and intimate neighbors and business
acquaintances, who testified that, after these convey-
ances, Korte and Metzger, in the presence of each
other, repeatedly said that they were in business
together, as partners in equal shares, under the name
of Henry Korte, and that both of them seemed to have
control and direction of the business, as such partners.
One of the witnesses introduced by the defendants, who
was a subscribing witness to the deeds, testified that,
when the deeds were delivered, Metzger said to Korte:
"Henry, here is your papers.    Hand me my money."
This occurred in the store, and there was a little room
adjoining, into which Korte went, and brought out a
hat box which contained bundles of money, each
having around it a white paper band, whereon was
marked the amount of the contents.    They looked
over the figures on the bundles, and then Metzger told
Korte to take the money and put it away again; and
Korte took the money, and put it back in the place

where he got it from.   On the part of the defendants,
witnesses were introduced to show that Metzger ceased
all control of the store and other property after the
conveyances, and had repeatedly said that he had sold
out to Korte, and a receipt for the consideration named
was also shown in evidence.   The answer avers that
Metzger intended to go to Europe, and had sold out to
Korte with that expectation, but that he afterward recon-
sidered his visit to Europe, and, being much attached
to his daughter, Korte's wife, continued to live with
her until his death.   The master found that Korte had
not in reality paid Metzger anything for the property,
and that, in truth and in fact, Metzger and Korte
were partners after the conveyances.   The master
expressly found that it was not the purpose of Metzger
to disinherit his children, the complainants, and he
recommended a decree in their favor.   The defendants
filed exceptions to the report of the master, and the
court below sustained the exceptions, and entered a
decree for the defendants, dismissing the bill; and this
cause was brought here by appeal.

1.  The findings of the master were upon disputed
questions of fact, and were reached after weighing the
BILL of discovery: conflicting testimony of a large number of
reference to master: pre-
sumption. witnesses.   He had many opportunities
afforded, by observation, for judging of
the intelligence, character, and credit of the witnesses,
which could not be obtained from the dry transcript
of the testimony.   The court below had, in the nature
of things, no better facilities for weighing and judging
that testimony correctly than an appellate court would
have.   It is not within the general province of a master
to pass upon all the issues in an equity case, and it has
been said that it is not competent for the court to refer
the entire decision of the case to him, without the con-
sent of the parties.   Kimberly v. Arms, 129 U. S. 517.
In the case at bar the court referred all of the issues to

the master, without objection, and the parties united in executing the order. Consent is to be presumed where there is no objection. In Medsker v. Bonebrake, 108 U. S. 69, the bill was filed to set aside a deed to the debtor's wife, on the ground of fraud upon his creditors, and the issues were referred to a master without objection. The master found the issues for the defendants, but the circuit court overruled the master on the facts, and entered a decree for complainants. On appeal to the supreme court the lower court was reversed, and Mr. Justice MILLER remarked: "The evidence taken by the master was reported with his findings, and the case seems to have been treated by the court below without much regard to the finding of facts by the master, or any special regard to the exceptions made to his report. This is not correct practice in chancery in the circuit courts of the United States, whatever may be the rule in the state courts. The findings of the master were prima facie correct." In Kimberly v. Arms, 129 U. S. 517, the rule is laid down that the report of a master upon disputed questions of fact should be treated "as so far correct and binding as not to be disturbed unless clearly in conflict with the weight of the evidence upon which they are made."

CONFLICTING evidence: findings of fact by master: presumption.

And in Tilghman v. Proctor, 125 U. S. 149, Mr. Justice GRAY says: "In dealing with these exceptions, the conclusions of the master, depending upon the weighing of conflicting testimony, have every reasonable presumption in their favor, and are not to be set aside or modified unless there clearly appears to have been error or mistake on his part." See, also, Davis v. Schwartz, 155 U. S. 633; Trow v. Berry, 113 Mass. 146; Howe v. Russell, 36 Me. 127; In re Murray, 13 Fed. Rep. 551; Greene v. Bishop, 1 Cliff. C. C. 186. The decisions on this subject by the supreme court of the United States are specially pertinent, in view

of section 522, Compiled Laws.  If the rule in regard to the effect of a master's finding of facts were otherwise, the service of the master, now so generally employed to pass upon all the issues of fact, would be of little aid to the administration of justice.  Mason v. Crosby, 3 Woodb. & M. 269.  If the findings of the master had been based upon illegal testimony, or he he had misapplied the law of the facts, in drawing his conclusions as to them, there would undoubtedly have been good ground for setting his findings aside.  Troy Iron & N. Factory v. Corning, 6 Blatchf. 332.  But no exception was filed upon such ground, and none was urged here.  It has been urged that the presumptions in favor of a master's report apply only in the court below, and upon appeal from the district court, the presumption is in favor of that court's action.  In Howard v. Scott, 50 Vt. 52, the court says, "Neither the court of chancery, nor the supreme court on appeal, will review the findings in regard to the weight to be given to the testimony."  And in Medsker v. Bonebrake, Tilghman v. Proctor, and Kimberly v. Arms, the supreme court reversed the court below for overruling the master's finding of fact.  The court below had, as we have, a mere dry transcript of testimony upon which to base conclusions of fact.  It will be necessary to determine whether the findings of fact by a master, which have some evidence to sustain them, will be treated as unassailable in all respects as the verdict of a jury.  It will be sufficient to say in this case that the findings of fact by a master, which depend upon the weight of conflicting testimony, have every presumption of correctness in their favor, and are not to be set aside or modified unless there clearly appears to have been error or mistake on his part, and that a disregard of this rule by the district court, acting solely on the master's report, and without any new testimony, is reversible error.

2. If this case had been one depending upon proof of an oral agreement, made at the time of the convey-

ADMISSIBILITY of parol evidence to prove partnership name in deed.

ance, to take and hold the real property conveyed by Metzger to Korte in trust for Metzger, it would seem that the statute of frauds would have been an insuperable bar, as such an express trust must have been manifested or proved by writing, although it need not have been so created and declared. 1 Perry, Trusts, sec. 79; Movan v. Hays, 1 Johns. Ch. 341. And the same result would probably have occurred, had the complainants' right depended merely upon proof that the consideration mentioned in the deeds had not in fact been paid by Korte to Metzger. Evidence will be received to contradict the recitals in the deed as to the considerations paid, in order to establish a debt from the grantee to the grantor, but not for the purpose of defeating the operation of the conveyance, or creating a resulting trust. To allow parol evidence for such a purpose would be to break in upon the express provisions of the statute of frauds. 1 Perry, Trusts, sec. 162. But in this case the bill, the proofs, and the findings of the master proceed upon the theory, and the point to which the evidence mainly directed was, that the name of Henry Korte was used in this matter as a firm name by the partnership composed of Metzger and Korte; and it was, therefore, a simple question of identity, and not a case of express trust, depending upon oral proofs, or a case of resulting trust, depending upon the nonpayment of the consideration named in the deed. And, indeed, that seems to have been the view of the learned solicitors for the defendants, as no point was raised upon either such ground. The absence of actual consideration was a fact to be weighed in connection with other testimony upon this subject, as equity naturally looks with suspicion upon conveyances made to strangers without consideration. Id. The name of one of the

partners may be used as a firm name. Though a presumption may arise that it was a personal transaction, yet the proofs may show it to be one of partnership. Bank v. Monteath, 1 Denio, 404; Winship v. Bank, 5 Pet. 529.

It, therefore, appearing from the report of the master that the facts were with the complainants as to the ownership by the firm of the property held by Henry Korte, and the complainants, being the heirs of Metzger, became vested with his interest, it is therefore ordered that the cause be reversed and remanded, with directions to the district court to enter a decree in conformity with the findings and recommendations of the master, and for such further proceeding therein as the nature of the case may require.

Smith, C. J., and Collier, Hamilton, and Laughlin, JJ., concur.