BOND, Circuit Judge. Wilson, a voluntary bankrupt, seeks his discharge, which is resisted by the creditors, because, as they allege, his assets are not equal to thirty per centum of the claims proved against his estate. It seems that the bankrupt returned in his schedule property in amount equal to the debts proved against him, but he claimed its possession as a homestead exemption under the statute of Virginia, which claim was allowed him by the district court. Assets, within the meaning of the 33d section of the bankrupt act, are the proceeds of the bankrupt's property which come into the hands of his assignee, and are applicable to the payment of his debts. Here manifestly nothing came into the assignee's hands available for that purpose. If the bankrupt was entitled to hold this property exempt from liability for his debts, as the district court determined he was, how can it be considered assets applicable for the payment of those debts? If a stranger had been entitled to the possession of it, certainly it could not be regarded as assets in the hands of the assignee. How does the case differ when the bankrupt is entitled to hold it exempt from liability for the payment of his debts? Can that be said to be available for the payment of debts which the law says shall be exempt from liability for such payment? The district court allowed the bankrupt's discharge, but we think as the assent of creditors is not alleged, and no assets whatever came into the hands of the assignee applicable to the payment of his debts, the decree of the district court granting the bankrupt his discharge must be reversed with costs.

---

## Case No. 17,783.

### In re WILSON.

[6 Law Rep. 272.]

District Court, D. Massachusetts. Sept., 1843.

ground relied on by the creditors, was, that in March, 1842, all the stock of the bankrupt, except groceries and furniture, was attached by the Kinderhook Bank, when a receipt was given on a valuation of $900, and the suit is now pending. The receiptor took the property, and the bankrupt took no notice of it in the schedule annexed to his original petition. There was considerable testimony upon this and other points, the bankrupt taking the ground that he acted under a mistake as to his duty in this particular.

---

## Case No. 17,784.

### In re WILSON.

[2 Lowell, 453; [1] 13 N. B. R. 253.]

District Court, D. Massachusetts. Dec., 1875.

BANKRUPTCY—PETITION OF PARTNER AGAINST CO-PARTNER—INVOLUNTARY PROCEEDING—DISCHARGE.

1. A proceeding in bankruptcy by a partner against his copartner is not an involuntary proceeding, within section 9, Act 1874, c. 390 (18 Stat. 180).

2. Therefore, a partner, who is in bankruptcy upon the petition of his copartner, cannot obtain his discharge without the assent of creditors or the amount of assets required in voluntary proceedings.

[Cited in Re Duncan, Case No. 4,132; Re Austin, Id. 662.]

W. F. Wilson was adjudged bankrupt upon the petition of one Harrington, alleging himself a partner with Wilson, and that the firm was insolvent. Wilson denied the partnership, and a jury trial was had, which resulted in a verdict for the petitioner. Wilson now applied for his discharge, but filed no assent of creditors, and had not paid a sufficient dividend to enable him to dispense with the assent, if any is required. A creditor objected on this ground, and alleged certain frauds besides.

E. Avery, for the bankrupt, cited Act 1874, c. 390, § 9 (18 Stat. 180); In re Penn [Case No. 10,927].

N. B. Bryant, for the creditor.

LOWELL, District Judge. An able argument has been addressed to me, that section 9 of the new statute absolves the defendant from obtaining the consent of his creditors,

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

on the ground that, as to him, the proceedings are compulsory.

It is true that this defendant did not consent to be adjudged bankrupt in connection with one whom he denied to be his copartner, and that rule 18 requires, in such cases, notice and other proceedings, including jury trial, if demanded, precisely as if the petition were by creditors; and that the discharge of each partner is separate and distinct from that of any other. Still I am of opinion that these are not involuntary or compulsory proceedings under section 9 of the act of 1874. That statute requires a considerable number of creditors to join in a petition, and, as has been pointed out by Judge Blatchford, precisely the number required to assent to the discharge of a voluntary bankrupt; so that the theory of the statute appears to be that those creditors who have chosen to put a person into bankruptcy against his will are presumed to assent to his discharge, if he has committed no actual fraud or misdemeanor against the meaning of the statutes. That presumed assent is not given when one partner petitions.

Again, creditors can only proceed for certain acts of bankruptcy; but a partner may petition on the ground that the firm is insolvent. Rule 18, indeed, seems to imply that a partner may allege acts of bankruptcy against the firm; but the statute speaks only of insolvency as the ground for a voluntary petition; or rather it says that partners may petition or be petitioned against like individuals; and an individual can only petition on the ground of his insolvency. I apprehend it would be very difficult to find any case in which a partner would not be estopped to petition for joint acts of bankruptcy. No such petition has ever been brought in this court.

If, then, partners are insolvent, either has a right to insist that the firm shall go into bankruptcy, and the statute does not even say the other shall be notified; but the court very wisely has adopted notice as a rule of practice to prevent fraud and surprise. If the insolvency is proved, the case is made out. No involuntary case, of the ordinary kind, can be made out by such evidence. In truth, the verdict in such a case as this simply establishes that the recusant partner ought to have joined in the voluntary proceedings.

Then look at the consequences. One partner, disposed to do his whole duty by his creditors, brings the petition; the other resists it, and is rewarded by a gift of his discharge; or the partners put forward one to take the burden, and compensate him in some way for the risk; or they take in a partner for the very purpose of playing this part.

It was argued that the words "compulsory" and "involuntary" describe two classes of cases: one by creditors, and one by partners. But it is plain that the words are used throughout this statute as strict synonymes. See especially section 6, where "compulsory" is evidently so used. Upon the whole, I am satisfied that section 9 refers only to the ordinary case of petitions in invitum.

If this case should be taken to the circuit court, I wish it to be distinctly understood that I have not passed upon the allegations of fraud. Discharge refused.