## MEDSKER and Wife *v.* BONEBRAKE, Assignee.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF INDIANA.

*Bankruptcy—Equity—Fraudulent Conveyance—Husband and Wife—Practice.*

1. Where a wife lends to her husband money which is her separate property, upon his promise to repay it, it creates an equity in her favor which a court of equity will enforce in the absence of fraud.

2. If the husband, being insolvent, mortgages real estate to secure such a debt to his wife, previously incurred, a court of equity will not set aside the mortgage as fraudulent against the assignee in bankruptcy if the wife was ignorant of the insolvency and if there was no fraud.

3. One of two partners files a voluntary petition in bankruptcy, alleging that the other partner will not join him, and praying to have him declared a bankrupt: *Held*, that this, as to the other partner, is a case of involuntary bankruptcy within the meaning of the act of June 22d, 1874, ch. 130, § 10, 18 Stat. 180. .

4. On a reference in equity to a master, the findings of the master are *prima facie* correct. Only such matters are before the court as are excepted to, and the burden of sustaining the exception is on the objecting party.

This was a suit in equity by an assignee in bankruptcy, to set aside a conveyance of real estate made shortly before the bankruptcy, by the bankrupt to his wife, through the intervention of a third party. The following extracts from the report of the master show the facts found by him :

" On the 2d day of August, 1876, John R. Medsker and wife conveyed the land described in the bill to Cyrus J. McCole, who, on the 4th of same month, reconveyed the same to the wife, Elizabeth Medsker, the defendant. At the time of these transfers the land belonged to John R. Medsker in fee simple.

" On the 1st day of December, 1876, one Poe, with whom Medsker was in partnership in the hardware business, filed his petition (voluntary) in bankruptcy, alleging that Medsker would not join him and making him a party, praying that he be adjudged a bankrupt.

" On the 29th of December, 1876, Medsker comes in, confesses bankruptcy, and is adjudged accordingly.

\*       \*       \*       \*       \*       \*       \*·

" The defendant, the evidence shows, married the bankrupt Medsker some thirteen years ago. During the last ten years her husband came into possession of moneys belonging to her, proceeds mostly of lands, inherited from her father, amounting in the aggregate to $5,600. She expressly testifies that he agreed to return it to her, and she always claimed that he was her debtor to that amount. Under the evidence, I think there is no doubt she was a creditor at the time of the conveyance. I think the evidence shows that he was insolvent also at that time, though not that she knew it. I think the conveyance was made

and accepted to prefer her to other creditors. Under the evidence as to the value of the land, which is conflicting, I cannot find that his indebtedness to her was not a reasonable consideration for the conveyance of the land, or that there is such great disparity between the land and the debt it was conveyed to satisfy as to indicate bad faith and a purpose to defraud other creditors."

The master found as law that the bankruptcy was involuntary on Medsker's part; that the transaction was not void under the statute; and that it was not void for fraud.

The assignee's counsel excepted to this report. 1st. That the evidence showed that Medsker was a voluntary bankrupt. 2d. The wife was not a creditor, and knew of the insolvency when the security was taken. 3d. The conveyance was made with intent to defeat and defraud creditors; and they also excepted to the conclusions of law. The court sustained the exceptions and decreed that the conveyance should be set aside; from which decree the wife appeals.

*Mr. S. Shellabarger* and *Mr. John A. Finch* for the appellant.

*Mr. Addison C. Harris* and *Mr. W. H. Calkins* for the assignee, after arguing on the facts that the wife was not a creditor and that the transaction was fraudulent, cited *Seitz* v. *Mitchell*, 94 U. S. 580; *Humes* v. *Scruggs*, 94 U. S. 22; *Wickes* v. *Clarke*, 8 Paige, 161; *Resor* v. *Resor*, 9 Ind. 347; *Johnson* v. *Rockwell*, 12 Ind. 70; *Phillips* v. *Frye*, 14 Allen, 36; *Lyne* v. *Bank of Kentucky*, 5 Marshall, 545; *Wylie* v. *Basil*, 4 Md. Ch. 327; *Nolen's Appeal*, 23 Penn. St. 37; *Besson* v. *Eveland*, 26 N. J. Eq. 468; *Kline* v. *McGuckin*, 25 N. J. Eq. 423; *Dutcher* v. *Wright*, 94 U. S. 553; *Reade* v. *Livingston*, 3 Johns. Ch. 481; *Savage* v. *Murphy*, 34 N. Y. 508; *Case* v. *Phillips*, 93 N. Y. 164; *Fox* v. *Moyer*, 54 N. Y. 125; *Jacobs* v. *Hesler*, 113 Mass. 157; *In re Jones*, 6 Biss. 68; *Moyer* v. *Adams, Assignee*, 9 Biss. 390; *Lyon* v. *Green Bay, &c., Railroad Company*, 42 Wis. 548.

MR. JUSTICE MILLER delivered the opinion of the court.

This is a bill in chancery, brought by Bonebrake, as assignee

in bankruptcy of John R. Medsker, against said Medsker and his wife.

The object of the bill is to subject to administration, as part of the assets of the bankrupt, a farm of 162 acres of land on which Medsker and his wife were living, the legal title of which was in Mrs. Medsker.

It appears that on August 2d, 1876, Medsker and wife conveyed this land to McCole, who, on the 4th day of the same month, conveyed it to Mrs. Medsker, the consideration in each deed being recited as $8,000.

On December 1st, 1876, one Poe, with whom Medsker was in partnership in the hardware business, filed his petition in bankruptcy, alleging that Medsker would not join him and making him a party, and praying that he be adjudged a bankrupt. On the 29th of that month Medsker came in and confessed himself a bankrupt, and was so adjudged.

The charging part of the bill, as regards the invalidity of the title conveyed to Mrs. Medsker by these two deeds, reads as follows :

" On that day, to wit, August 2d, 1876, within four months of the time of filing said petition in bankruptcy, the said John R. Medsker, being the owner, in his own right, of the real estate above described, and being indebted as aforesaid, with the fraudulent intention of defeating the operation and effect of the bankrupt law, and with the fraudulent intention of preventing his property from being distributed and applied in payment of his debts as provided for in the bankrupt law, and with the intention of preferring, in violation of the provisions of the bankrupt law, a pretended claim of the defendant Elizabeth Medsker, which claim your orator says was unjust and incorrect, and not a valid and legal claim against said John R. Medsker, the said John R. Medsker, together with his wife, the defendant Elizabeth Medsker, did execute, without any consideration whatever, to one C. J. McCole, who was a party to such fraudulent purpose, a deed of conveyance of said real estate, and the said grantee, C. J. McCole, in pursuance of the previous understanding and agreement, and for the purpose of carrying out the fraudulent intent before expressed, did convey said real estate to

the defendant Elizabeth Medsker, wholly without any consideration, on the 4th day of August, 1876.

"And your orator states that said Elizabeth Medsker was fully cognizant of the fraudulent and wrongful intention of said John R. Medsker, and participated in the same and joined in the deed to McCole for the purpose of carrying out the same, and accepted said fraudulent conveyance from C. J. McCole with full knowledge of its purpose, and with the intention of carrying out said fraudulent purpose."

To this bill Medsker and his wife filed their answer, under oath, in which they admit the conveyances and the bankruptcy proceedings, but denying all fraud in the transaction, and that Medsker was in failing circumstances when the deeds were made, or that they knew or believed he was unable to pay his debts. They aver that after said conveyances were made a large part of the indebtedness of Poe and Medsker was paid off in the ordinary course of business.

They further allege that the conveyances mentioned were made in order and for the express purpose, and for no other purpose, of paying a debt of $5,700 which Medsker owed his wife, and the interest accumulated thereon, for money loaned by her to him, which he had promised to repay to her on demand.

It is evident that the bill is framed upon the idea that section 5128 of the Revised Statutes was in force, and that the periods within which such conveyances by an insolvent could be assailed as void under the bankrupt law were four and six months, and all its allegations seemed aimed at such acts as would be unassailable after those periods. But the act of 1874 has shortened these periods to four and two months in cases of involuntary bankruptcy. 18 Stat. 180, ch. 390, § 10.

We do not doubt that Medsker's was a case of involuntary or compulsory bankruptcy within the meaning of this amendment. The distinction intended by this language is clearly between the cases in which the bankrupt himself and of his own volition initiates proceedings in bankruptcy, and those in which they are commenced by some one else against him.

In the one case it is voluntary and in the other compulsory.

It is not a voluntary bankruptcy if the man is forced into it against his will by his partner, any more than by any one else; and it is compulsory and involuntary if he refuses to join in such case and is forced into it, as much as in any other enforced bankruptcy.

These deeds cannot be impeached, therefore, on the grounds of preference or payment in violation of the bankrupt law.

But whatever may have been the case in the mind of the pleader who drew the bill, there is language which, if liberally construed, may be held to charge that these conveyances were void or voidable, as being made with the intention of defrauding and cheating creditors generally, and without any valuable consideration.

In this view the bill was very loosely drawn, but as issue was taken on it and testimony produced, we will inquire into its effect as proof of the charge.

When the pleadings were made up an order was entered, without objection, referring the case to a master to take the evidence and report his finding thereon.

He reported that Medsker had received, at various times during the ten years preceding his bankruptcy, moneys belonging to his wife, mostly proceeds of land inherited from her father, amounting in the aggregate to $5,600; and that he had agreed to return it to her, and that she had always claimed that he was her debtor to that amount. He, therefore, finds she was a creditor at the time of the conveyance. He also finds that Medsker was insolvent at that time, and that his wife did not know it; and, on the whole, that the allegations of the bill are not sustained.

Exceptions to this report were filed, which were sustained by the court and a decree rendered for the assignee.

The evidence taken by the master was reported with his findings, and the case seems to have been treated by the court below without much regard to the finding of the facts by the master, or any special regard to the exceptions made to his report. This is not correct practice in chancery cases in the circuit courts of the United States, whatever may be the rule in the State courts.

The findings of the master are *prima facie* correct. Only such matters of law and of fact as are brought before the court by exceptions are to be considered, and the burden of sustaining the exception is on the objecting party.

In the case before us we are inclined, after a careful examination of the testimony, to concur with the master's report.

It is altogether a matter of the weight of evidence.

1. It is denied that the money was received of the wife by the husband, and if received, that it was a loan.

The testimony leaves no doubt that there was received from the estates of the wife's deceased father and brother, at different times, the aggregate sum of $5,700. The wife swears positively that she loaned these sums to her husband, who repeatedly promised to pay her; that at one time, more than a year before the bankruptcy, they had sharp words or ill-feeling about it, and he told her he had nothing but the farm and would convey that to her, and that the conveyances finally made were in pursuance of his repeated promise to do so. All this is wholly uncontradicted.

2. Much testimony is taken to prove that the price was so inadequate as to show fraud, though no such charge is made in the bill.

The fair result of all the testimony on this point is that the land was worth about $8,000, the sum recited in the conveyance; and if interest be computed on the $5,700 from the periods at which the various sums were received, it will amount to the full value of the land, if not more, at the time the deeds were made.

3. There is no reason to disbelieve Mrs. Medsker when she swears positively that she did not know nor suspect her husband's insolvency until bankrupt proceedings were commenced.

Her statement is confirmed by the allegation, undisputed, that between the time of the conveyance and the petition in bankruptcy $4,000 of their debts were paid, and the bill alleges that their debts were only $5,000 in excess of their assets.

4. The master, who was present and heard Mrs. Medsker testify, and could see her manner, and is therefore better able to determine the weight due to her testimony, says he has no

doubt she was a creditor, and was in ignorance of Medsker's insolvency. *Dean* v. *Pearson*, 102 Mass. 101.

5. The conveyance first to McCole, who paid nothing, but took the title in trust for Mrs. Medsker, and from him to her, was to satisfy the common-law inability to make a direct conveyance from husband to wife, and is no evidence of fraud.

In the case of the *Atlantic National Bank* v. *Tavener*, 130 Mass. 407, that court say : : "The question whether a loan by the wife to the husband, of money which is her separate property, upon his promise to repay it, creates an equity in her favor, which a court of equity will enforce, has not been decided in this commonwealth. But it has generally, if not uniformly, been decided in the affirmative in other courts," for which numerous cases are cited. It is added : " That the jury in this case having found that the money delivered by the wife to the husband was by way of loan, and not of gift, and that his subsequent conveyance of land through a third person to her in repayment of that loan, was not made with the purpose of hindering, delaying, or defrauding creditors, that conveyance, to satisfy his equitable obligation to his wife, was not a voluntary conveyance, and was valid against his creditors. *Bullard* v. *Briggs*, 7 Pick. 533 ; *Forbush* v. *Willard*, 16 Pick. 42 ; *Stetson* v. *O'Sullivan*, 8 Allen, 321 ; *French* v. *Motley*, 63 Maine, 326 ; *Grabill* v. *Moyer*, 45 Penn. St. 530 ; *Babcock* v. *Eckler*, 24 New York, 623 ; *Steadman* v. *Wilbur*, 7 R. I. 581."

Such is precisely the case here, as reported by the master, and, as we think, supported by the evidence ; and

*The decree of the circuit court is reversed, and the case remanded, with directions to dismiss the bill.*