## WELLING v. LA BAU.

### (Circuit Court, S. D. New York. February 25, 1888.)

1. PATENTS FOR INVENTIONS—INFRINGEMENT—REFERENCE.
    Upon a reference in a suit for infringement of reissued letters patent No. 5,940, for an improvement in artificial ivory, consisting of shellac and talc in substantially equal parts, it appeared that defendant used a composition of shellac and "fiber white," claimed to be a different substance from talc, and to have been discovered since the issue of the patent. The master found that "fiber white" had all the physical and chemical properties of talc, and was talc. *Held,* that as his report showed there was, as to that fact, much conflicting testimony, his finding will not be set aside.

2. SAME—INFRINGEMENT—DAMAGES.
    Where plaintiff's invention relates to a new composition of matter, and the infringing article is made of the patented material, and this alone, the measure of the patentee's damages is the entire profit he would have made, to the extent of the sales by defendant of the infringing article.

On Exceptions to Master's Report.

On the 30th of June, 1882, the complainant, William M. Welling, obtained a decree sustaining reissued letters patent No. 5,940, dated June 30, 1874, for an improvement in artificial ivory. See 12 Fed. Rep. 875. The defendant, John H. La Bau, having made and sold certain articles containing the patented composition, viz., shellac and talc, in substantially equal parts, was adjudged an infringer, and a master was appointed to take the account. After a long and vigorously contested controversy, during the progress of which the court was several times appealed to, (see 32 Fed. Rep. 293,) the master, on the 24th of December, 1886, presented a report, in which he assessed the complainant's damages at $3,634.94. After the date of the original patent, and, probably, about the year 1872, in the extreme southeastern portion of St. Lawrence county, New York, a mineral was discovered which was placed upon the market and known commercially as "fiber white." Large quantities of this mineral were used by the defendant. The question of fact over which the main contest arose was whether "fiber white" was or was not talc. The master found that it had all the physical and chemical properties of talc, and was talc. He further found as follows: That the white checks sold by the defendant contained shellac and talc, in substan-

tially equal proportions; that from March 1, 1876, to May 1, 1879, the complainant had no competitor in the manufacture and sale of these checks other than the defendant; that, during this period, the defendant sold large quantities of infringing checks, which, in very much the larger part, were sold to parties who were or had been regular customers of the complainant; that the complainant was at all times ready and able to supply the market, and if the defendant had not interfered he would have sold, in addition to his regular sales, at least the number of checks sold by the defendant. Although the defendant's infringement continued, in connection with others, after May 1, 1879, the master limited the recovery to damages sustained prior to that date, the measure being the loss of profits which the complainant would have made had he sold the checks sold by the defendant at the defendant's prices. On the 28th of December, 1886, the defendant filed exceptions, disputing the accuracy of the report in 12 particulars, the principal grounds being the alleged errors of the master in finding—*First*, that "fiber white" was talc; *second*, that the infringing checks contained shellac and talc, in substantially equal parts; *third*, that the defendant was a competitor, and the only competitor, of the complainant; and, *fourth*, that the complainant was ready and able to supply the market. Other exceptions allege error in the computation and dispute the master's conclusions of law.

*Frederick H. Betts*, for complainant.

*Lucien Birdseye* and *James C. Cloyd*, for defendant.

COXE, J., (*after stating the facts as above.*) The master has decided no question of fact which was not the subject of protracted and vehement contention. Testimony was introduced by both parties. Experts were called, and the disagreement between them was radical and irreconcilable. Every forward step made by the complainant was vigorously resisted by the defendant. Between them the master was compelled to decide. It is wise not to lose sight of the fact that the court is not to determine these facts *de novo*. If the report has been fairly and honestly rendered, without undue influence or manifest error, it should be permitted to stand. It is a matter of no moment that a different result might have been reached had the accounting been taken by the court. If the record shows that there was testimony *pro* and *con*, so that intelligent minds might differ upon the questions presented, the court will not assume to substitute its judgment for that of the master. His decision upon disputed facts should be final. A master stands as the representative of the court. He is selected with special reference to his fitness and experience. In seeing and hearing the witnesses he possesses advantages in determining questions of fact which a reviewing tribunal can never have. A master's report is not to be lightly brushed aside. It is entitled to respect. The proceedings before him have almost the same solemnity as a trial before a referee or a jury, and the familiar rule which precludes the court from setting aside a verdict which is not against the weight of evidence is, to a great extent, applicable. *Bates* v. *St. Johnsbury*, 32 Fed. Rep. 628; *Welling* v. *La Bau*, 32 Fed. Rep. 293; *Metsker*

v. *Bonebrake*, 108 U. S. 66, 2 Sup. Ct. Rep. 351; *Wooster* v. *Thornton*, 26 Fed. Rep. 274; *Bridges* v. *Sheldon*, 7 Fed. Rep. 17; *Greene* v. *Bishop*, 1 Cliff. 186; *Donnell* v. *Insurance Co.*, 2 Sum. 366; *Mason* v. *Crosby*, 3 Woodb. & M. 268.

The principal contention arises over the finding of the master that the "fiber white" used by the defendant was talc. The complainant cannot succeed upon the theory that "fiber white" was an equivalent for talc, for it was not known at the date of the patent. If, however, it was talc in fact, the principal obstacle in the complainant's path is swept away. Recognizing its importance the complainant has bent every energy to establish the affirmative, and the defendant the negative, of this proposition. As this is largely a scientific question, the situation may be well illustrated by placing in juxtaposition an epitome of the views of the expert witnesses, each being to some extent corroborated, and to some extent contradicted, by other testimony, and by collateral facts and circumstances.

| *Prof. Chandler, for the complainant.* | *Dr. Ledoux, for the defendant.* |
| --- | --- |
| I am familiar with the commercial article known as "fiber white." It is talc. I know "fiber white" to be talc by looking at it. It has the structure of talc; it has the fracture of talc; it has the lustre of talc: it has the unctuous feel of talc,—and no other mineral possesses all these properties at the same time. Taken together they constitute the mineralogical identity of talc. There is no other mineral with which you would be liable to confound it. *Secondly.* I have examined the pulverized mineral under the microscope, and the powder has the appearance of talc. *Thirdly.* Analysis shows it to be talc. I am satisfied, therefore, that this mineral is talc, as it possesses all the physical and chemical properties of talc. | It is utterly unreasonable, if not impossible to even assume that "fiber white" is talc, because it does not correspond with one of the thirty-six analyses of talc shown in Dana's Mineralogy, or with any recognized specimen of talc. It contains more alumina, more lime, more manganese than any of them. "Fiber white" is fibrous. Talc is not fibrous. "Fiber white," when considered from a strictly mineralogical view, or chemically, or from a microscopic or other personal examination, cannot possibly be talc. I am confirmed in my opinion that "fiber white" is not talc by my recent investigations, and by my failure to find any samples of fibrous talc by the most diligent search and inquiry. |

It was the duty of the master to decide between these two opinions. He did decide that "fiber white" was talc, and he had so decided when this court (*Welling* v. *La Bau, supra*) said:

"If the master has found that 'fiber white' is talc, although not dealt in commercially by that name, he has determined a disputed question of fact upon which the evidence is very conflicting. * * * The report of a master will not be set aside as to matters of fact upon which the evidence is doubtful, or the inferences uncertain, much less where his conclusions are reached upon conflicting testimony, and involve, to a greater or less degree, the credibility of the witnesses."

If the finding of the master upon this question were against the evidence, the court should not hesitate to set it aside; but it is thought,

after a careful consideration of the testimony, that it is not against the evidence, and should be undisturbed.

The foregoing views dispose of nearly all the other exceptions, which are based upon alleged errors of the master in deciding disputed questions of fact. If "fiber white" was talc, the proof is sufficiently clear that the defendant's white checks contained shellac and talc, in substantially equal parts. The evidence adduced to establish the identity of the checks analyzed by Prof. Chandler with those manufactured by the defendant was sufficient to sustain the master's action in that regard, and the same is true of the testimony upon the question of competition and the ability of the complainant to supply the market. It is thought that the rule enunciated in the carpet design cases (*Dobson* v. *Dornan*, 118 U. S. 10, 6 Sup. Ct. Rep. 946; *Dobson* v. *Carpet Co.*, 114 U. S. 439, 5 Sup. Ct. Rep. 945) has little application to the case at bar. Those decisions proceeded upon the theory that, as there was no evidence to establish the value imparted to the carpet by the design, it was error to attribute to the patent the entire profit made upon the sale of the carpets. When, however, the invention relates to a new composition of matter, and the infringing article is made of the patented material, and this alone, the measure of the patentee's damages may be the entire profit which he would have made. There is no room for segregation. It is not at all like a patented improvement upon an existing machine, for there it is entirely clear that evidence must be given to show what portion of the profits is due to the patented feature. Where the patent covers the infringing article in its entirety, no such evidence can be given. There can be nothing in the proposition that because the defendant's checks were of a lower grade than the complainant's the master's computation is erroneous, for the reason, among others, that they were so nearly alike in appearance as to deceive buyers not only, but experts in the trade.

The evidence has been examined with care, and no error which would warrant the court in refusing to confirm the report has been discovered. In many respects the report is a most conservative one. The exceptions are overruled, and the report of the master is confirmed.