### In re CARLETON et al.
#### (District Court, D. Massachusetts. April 24, 1902.)
#### No. 5,880.

1. BANKRUPTCY—PARTNERSHIP—PETITION BY ONE PARTNER—DEFAULT OF OTHER PARTNER—VOLUNTARY PROCEEDING—INTERVENING CREDITOR.

Under Bankr. Act 1898, § 5, providing that a partnership may be adjudged a bankrupt, and General Order No. 8, providing that any member of a partnership who refuses to join in a petition to have the partnership declared bankrupt, shall be entitled to resist the prayer of the petition in the same manner as if the petition had been filed by a creditor of the partnership, and that notice of the filing of the petition shall be given to him, where, on the filing of a petition by one partner, a copy was duly served on the other partner, and he entered no appearance, and was defaulted, the proceeding should be deemed voluntary on the part of both partners as against a creditor who sought to intervene and contest on the ground that the firm was not insolvent.

2. SAME—CREDITOR—RIGHT TO INTERVENE.

A creditor cannot intervene to oppose an adjudication under an ordinary voluntary petition in bankruptcy by setting up that the petitioner is not insolvent.

In Bankruptcy.

William H. Preble, for Carleton.

Brandeis, Dunbar & Nutter and John G. Palfrey, for creditor.

LOWELL, District Judge.   A petition was filed by Carleton setting out that he was a partner with Freeman in the firm of J. E. Carleton & Co., and that the partners were unable to pay their debts in full; that Carleton was ready to surrender "his and their" property for the benefit of their creditors, "and desire to obtain the benefit of the acts of congress relating to bankruptcy." No act of bankruptcy was alleged.   Schedules A, B, C, and D were appended and filled out. The petition followed form No. 2 as closely as might be, and was similar to that generally used in this district in like case.   Pursuant to general order 8, Freeman was duly served with a copy of the petition.   He entered no appearance within the time appointed, and was therefore defaulted.   An attaching creditor seeks to intervene in order to contest the adjudication upon the ground that the firm was not insolvent, that Carleton was not a partner, etc.   The history in the United States of voluntary petitions filed by one partner with intent to put the firm into bankruptcy appears to be this:

Section 14 of the act of 1841 provided:

"That where two or more persons, who are partners in trade, become insolvent, an order may be made in the manner provided in this act, either on the petition of such partners, or any one of them, or on the petition of any creditor of the partners: upon which order all the joint stock and property of the company, and also all the separate estate of each of the partners, shall be taken, excepting such parts thereof as are herein exempted."   5 Stat. 448.

This enabled one partner to put all the members of his firm into bankruptcy, provided all were insolvent.   No specific provision was made for proceedings in which one partner asserted and the other denied insolvency; but, so far as outsiders were concerned, the petition was treated as a voluntary one.   See Chandler, Bankr. Law, pp. 9, 64; Ex parte Hall, Fed. Cas. No. 5,919; Ex parte Hull, Fed. Cas. No. 6,856; Bank v. Johnson, Fed. Cas. No. 133; Ex parte Galbraith, Fed. Cas. No. 5,187.

Section 36 of the act of 1867 provided:

"That where two or more persons who are partners in trade shall be adjudged bankrupt, either on the petition of such partners, or any one of them, or on the petition of any creditor of the partners, a warrant shall issue in the manner provided by this act, upon which all the joint stock and property of the copartnership, and also all the separate estate of each of the partners, shall be taken, excepting such parts thereof as are hereinbefore excepted."

This section, though much resembling section 14 of the act of 1841, yet differed from it in this:   Instead of authorizing one partner to put all the members of the firm into bankruptcy by a voluntary petition, it provided what should happen after all had been adjudged bankrupt upon the petition of one partner or of a creditor.

General order 18 dealt with the matter further, and provided, substantially, as in the existing general order 8, that:

"In case one or more members of a copartnership refuse to join in a petition to have the firm declared bankrupt, the parties refusing shall be

entitled to resist the prayer of the petition in the same manner as if the petition had been filed by a creditor of the partnership, and notice of the filing of the petition shall be given to him in the same manner as provided by law and by these rules in the case of a debtor petitioned against; and he shall have the right to appear at the time fixed by the court for the hearing of the petition, and to make proof, if he can, that the copartnership is not insolvent, or has not committed an act of bankruptcy, and to take all other defences which any debtor proceeded against is entitled to take by the provisions of the act."

Under this act and general order it was held by many courts that a petition by one partner to put the firm into bankruptcy need not allege an act of bankruptcy; an allegation of insolvency, as in the case of a voluntary petition, was sufficient. In re Stowers, Fed. Cas. No. 13,516; In re Noonan, Fed. Cas. No. 10,292; In re Hathorn, Fed. Cas. No. 6,214; In re Penn, Fed. Cas. No. 10,927. This was said in Re Gorham, Fed. Cas. No. 5,624; and in Re Grady, Fed. Cas. No. 5,654. It was assumed, more or less distinctly, in Re Bennett, Fed. Cas. No. 1,314; Id. 1,315; Re Prankard, Fed. Cas. No. 11,366; Re Moore, Fed. Cas. No. 9,750; Re Little, Fed. Cas. No. 8,390; Re Smith (D. C.) 16 Fed. 465. An examination of the files shows that this was the firmly-settled practice in this court under the act of 1867, and that to this extent the petition of one partner was deemed a voluntary proceeding, even as against a nonjoining partner. In some other respects the proceedings were treated as voluntary. In re Wilson, 2 Low. 453, Fed. Cas. No. 17,784. Yet in Metsker v. Bonebrake, 108 U. S. 66, 2 Sup. Ct. 351, 27 L. Ed. 654, the supreme court held that a case in which one partner petitioned and the other partner came in and confessed himself bankrupt was a case of "compulsory or involuntary bankruptcy," within the provisions of St. 1874, c. 390, § 10 (18 Stat. 180), and Rev. St. § 5128, dealing with preferences. Mr. Justice Miller said:

"We do not doubt that Metsker's was a case of involuntary or compulsory bankruptcy within the meaning of this amendment. The distinction intended by this language is clearly between the cases in which the bankrupt himself and of his own volition initiates proceedings in bankruptcy and those in which they are commenced by some one else against him. In the one case it is voluntary, and in the other compulsory. It is not a voluntary bankruptcy if the man is forced into it against his will by his partner, any more than by any one else; and it is compulsory and involuntary if he refuses to join in such case, and is forced into it, as much as in any other enforced bankruptcy." Pages 70, 71, 108 U. S., page 353, 2 Sup. Ct., 27 L. Ed. 654.

Section 5 of the act of 1898 provides that "a partnership, during the continuation of the partnership business, or after its dissolution and before the final settlement thereof, may be adjudged a bankrupt." Nothing is said in the act concerning the method or methods by which a partnership may be adjudged bankrupt either by voluntary or involuntary petition. For direction in this matter, we must turn to general order 8, which is, in substance, general order 18 of the act of 1867. Taking the act and the general order and form No. 2 together, it appears to me safest to assume that the law regarding partnership petitions is substantially the same as it was under the act of 1867. Notwithstanding the decision of the supreme court in Metsker v. Bonebrake, it appears to me that this court is not compelled to hold, either

under the act of 1867 and general order 18, or under the act of 1898 and general order 8, that this petition is so far involuntary as to permit a creditor of the firm to intervene in order to resist adjudication. See In re Murray (D. C.) 96 Fed. 600. As to the petitioner, these proceedings are purely voluntary. As to him a creditor has no more right to intervene than in the case of any other voluntary petition. As to the nonjoining partner, the proceedings are in some sense involuntary. As to intervention by a creditor, it is most convenient, and most consistent with justice and the general scheme of the act, to hold that the right "to make all defenses which any debtor proceeded against has a right to make" is confined to the nonjoining partner. If he makes no objection, then, so far as adjudication is concerned, the petition is to be treated generally as if it were altogether voluntary. Had this been an ordinary voluntary petition by both partners, the creditor could not have intervened to contest the adjudication. If partners are willing to be adjudged bankrupt, whether on the petition of one or on that of all of them, they are to have their way.

Difficulties may arise in construing either act. For example, the court may have to consider what defenses are now open to the nonjoining partner. Under the act of 1867 as has just been stated, the petition needed to allege no more than insolvency, and the nonjoining partner might take issue on the alleged insolvency. Under section 11 of the act of 1867, insolvency was necessary to support a voluntary petition. There is no such requirement in the act of 1898, though forms Nos. 1 and 2 both require the voluntary bankrupt to set out his inability to pay his debts. This inability may, perhaps, be taken to represent insolvency, though inability to pay debts is not the precise equivalent of insolvency as defined in section 1 of the act of 1898. Under the act of 1867 it was suggested in some cases that one partner might put the firm into bankruptcy by a petition alleging either insolvency without an act of bankruptcy or an act of bankruptcy without insolvency. It would be somewhat difficult to apply this theory to the act of 1898, and the matter is stated here only to show that the difficulties involved in the conclusion here reached have not been overlooked.

It cannot be pretended, indeed, that the result thus reached is in all respects satisfactory. The control of a partnership is the most difficult and complicated matter with which a court of bankruptcy has to deal, and no scheme of administration has yet been devised at once perfectly logical and perfectly workable. See In re Wilcox (D. C.) 94 Fed. 84. For example: (1) To deal with the joint estate in bankruptcy without at the same time dealing with the separate estate of all the partners, and (2) to refuse to deal with the joint estate in bankruptcy unless the separate estate of all the partners is brought under the same commission, are courses alike so difficult that neither can be followed to its last logical conclusion. A partnership can be treated neither as an entity altogether separate from the partners, nor as merely the sum of them. The case at bar illustrates this proposition.

The attaching creditor further contends that, even if this petition be treated as voluntary, yet he is entitled to intervene. The question thus presented amounts to this: Can a creditor intervene to oppose

an adjudication under an ordinary voluntary petition by setting up that the petitioner is not insolvent? This is not a case in which a person manifestly able to pay all his debts files a petition in bankruptcy for the purpose of embarrassing a particular creditor. In an unreported case of that sort this court has held that the creditor may have the adjudication set aside on the ground that the whole proceeding is a fraud upon the act, and an abuse of process. To permit a creditor, in an ordinary case, to resist adjudication on a voluntary petition, or to have an adjudication once made on such petition set aside upon the ground that the bankrupt was solvent, would introduce endless confusion.

Petition to intervene dismissed.