## Case No. 9,236.

### MASON et al. v. CROSBY et al.

[3 Woodb. & M. 258.] [1]

Circuit Court, D. Maine. Oct. Term, 1847.

PRACTICE IN EQUITY—MASTER'S REPORT—SIMILARITY TO VERDICT—FOR WHAT SET ASIDE—WHO MAY QUESTION—IMMATERIAL ERROR.

1. The report of a master in chancery, like the verdict of a jury, relates only to facts, and as

[1] [Reported by Charles L. Woodbury, Esq., and George Minot, Esq.]

to them will not be reconsidered and set aside, unless some clear mistake or abuse of power is shown.

[Cited in Celluloid Manuf'g Co. v. Cellonite Manuf'g Co., 40 Fed. 476; Welling v. La Bau, 34 Fed. 42.]

[Cited in Butterfield v. Beardsley, 28 Mich. 423; Hulings v. Hulings Lumber Co., 38 W. Va. 370. 18 S. E. 627.]

2. The burthen of proof is on the party objecting to the report.

3. Third persons, after a contract is executed, cannot question its consideration.

4. If a master err in some respects, which do not appear to have produced results materially different from what would otherwise have happened, it is no ground for setting aside or recommitting his report.

[Cited in Tilghman v. Proctor. 125 U. S. 150, 8 Sup. Ct. 901; Duden v. Maloy, 43 Fed. 408.]

[Cited in Hulings v. Hulings Lumber Co., 38 W. Va. 370, 18 S. E. 627.]

After the decree in this case before given [Cases Nos. 9,234 and 9,235], a master was appointed, who made a report, a copy of which is annexed:

"District of Maine, ss. U. S. Circuit Court.

"Horatio Mason et al., in Equity, v. James Crosby et al.

"Pursuant to a decretal order made in the above cause at the October term, 1846, of said court, by which among other things it was ordered, adjudged and decreed: That the contract, conveyance. mortgage and notes in complainant's bill mentioned, ought to be declared, and thereby were declared null, void and rescinded. That the money received therefor by the respondents and others on their account, being their creditors, at any time before the filing of the bill, and retained and not paid over to other persons interested in the premises at the time of the sale, on their shares, ought to be, and thereby was ordered to be refunded by each in the proportion so received and retained for his interest therein, but on account of the delay of filing the bill, and other circumstances, they are not to be held accountable for other money paid over to other persons then interested. That the notes so received by them, unless paid over, or assigned to others then interested, and for their shares therein, are adjudged to be returned to the complainants by the respondents, as they may be in their joint or several possession or control. That each of the respondents be further ordered to pay interest on all such moneys received and retained from the time of such receipt to the time of final judgment in this case, deducting therefrom their share in the value of any timber taken from said premises by the complainants or their order. That the respondents be decreed severally to pay their share of any taxes on said premises advanced by the complainants, and of any improvements made by them thereon. That on the repayments of the money received and retained, as aforesaid, by each of the respondents, and

the surrender of the notes, equal together to the amount of his share or equitable interest in said premises at the time of the conveyance, with the interest, taxes and improvements aforesaid, the complainants are ordered to execute a release to each so doing, of all their title and interest in the share in the premises, so equitably belonging to that respondent. That on the surrender, by either of the respondents, of notes which, with the money paid over by him as aforesaid, exceed what was paid for his share in the premises, the plaintiffs be directed to release to such respondents, in trust for other shareholders at the time of the sale, a further interest in the premises, corresponding to the proportion which such excess of notes bears to the whole consideration paid by the complainants. That the respondents were ordered to be thus responsible, and to this extent, notwithstanding the non joinder of others in the bill who had some equitable interest in the premises at the time of the sale. That the complainants are thus entitled to a decree, although one of them, since the sale, has released his interest in the premises to the other. That it be referred to a master to ascertain the amounts of money, interest, taxes and improvements, value of timber, notes, &c., before named, and prepare suitable conveyances to be executed as aforesaid, and have power to examine witnesses, and require disclosures of the parties under oath, and the production of papers pertinent to said inquiries, and do all other things appertaining to a master on the subject. I the subscriber, the master appointed for the purposes hereinbefore recited, submit the following report: I have been attended, agreeably to notice duly served and returned, by J. P. Bishop, Esq., counsel for the complainants, and by the defendant, James Crosby, and his counsel, Edward Kent, Esq., also by Deodat Brastow and William F. Boynton, executors, in Maine, of the defendant Brastow, deceased, and for whom also Mr. Kent acted as counsel. The consideration by the master of so much of said decree as relates to the notes of the complainants in possession of said defendants, or their assigns, and the surrender of the same to said complainants; so much as concerns the value of timber taken from the premises, or stumpage therefor; so much as relates to the payment of taxes and the character and value of permanent improvements on the premises; so much as has regard to the release by the complainants of any part of said premises to said defendants, or either of them, in trust, or otherwise, and the preparation of suitable conveyances for that purpose; and the consideration of all other matters in said decree not hereinbefore recited, except those hereinafter fully and particularly stated, have been waived by the parties respectively, or their counsel.

"The complainants by their counsel claim-

ed to charge the defendant Crosby, upon the pleadings and evidence in the cause, upon that produced to me, and upon the examination of said Crosby for the sum of fourteen thousand three hundred forty-two dollars and thirty-five cents; and the said Brastow's estate in the sum of eleven thousand six hundred and thirty dollars and thirty cents, including interest on the sums received by them respectively: the complainants insisting that said Crosby and said Brastow were responsible and were bound to refund to complainants all moneys received by them from the complainants, although said defendants had paid over certain proportional parts of said moneys to Sam Thurston, Brazier Brastow, Joseph Porter and John D. Wilson, as persons equitably interested in said premises at the time of the sale thereof to the complainants. To maintain this position, said complainants contended that the contracts between said defendants and said Thurston and others, were either parol agreements concerning real-estate, or bonds for the conveyance of certain parts of said premises to them respectively, on certain conditions which were never performed, giving said Thurston and others the mere right of preëmption. But the bill having charged one Fifield to be the agent of the defendants to negotiate a sale thereof, for the benefit and interest of said defendants, as well as said Fifield, and also for the benefit of other persons then unknown to the complainants, and the defendants by their answers having, in substance, admitted that such sale to the complainants was made for the benefit of themselves and of said Thurston, B. Brastow, Porter and Wilson, and the pleadings and proofs in the case and before the master, seeming to recognize said Thurston, B. Brastow, Porter and Wilson, as persons interested with the defendants at the time of the sale to the complainants, I have not felt at liberty to reconsider the evidence on which said decree was founded, or to give a different effect to the evidence adduced by the complainants or defendants at the hearing before me. I have, therefore, considered all moneys paid by the defendants, or either of them, to said Thurston, B. Brastow, Porter and Wilson, as paid to persons interested at the time of the sale to complainants. And for the same reasons, as between the defendant Brastow and William F. Boynton, although with some hesitation, I have treated moneys paid by the former to the latter, as paid to a person interested at the time of the sale to the complainants.

"It appeared that in pursuance of an agreement between the defendants and said Thurston, B. Brastow, Porter and Wilson, that the latter were entitled to receive certain proportions of all moneys which were to be paid by complainants to the defendants; that the complainants gave a mortgage to the defendants, conditioned to pay certain notes to one Munroe, given by the de-

fendants to said Munroe as part consideration for the land in controversy; that the defendants alone having signed said notes, and being legally responsible for the same, they took a bond from said Thurston, B. Brastow, Porter and Wilson, by which they assumed the responsibility of paying one-half of said notes of said defendants to said Munroe, if the same should not be paid by the complainants. It further appeared that some of said notes to Munroe were taken up by said Crosby and Brastow, and not by the complainants; that the defendants commenced an action on said bond, and recovered judgment thereon for one-half of one of said notes, and that said judgment was nearly satisfied by a levy of execution on the estate of said Thurston and others, or of some of them.

"Upon this state of facts, the complainants insisted that the money so recovered of said Thurston, B. Brastow, Porter and Wilson, if they were to be considered as persons equitably interested at the time of the sale, (but which was denied,) must be deemed and taken to be the proper money of the complainants paid to defendants, and that if the same was so distributed by defendants to Thurston and others, said recovery and satisfaction were to be construed as a refunding of the same to the defendants. But I consider it otherwise, and have made no allowance to the complainants for any part of said money. In ascertaining the amount of money paid by the complainants to the defendants, one or both of them, my attention has been called by the complainants to no other evidence than the pleadings and proofs in the cause. No testimony on this point has been offered by either party, and both parties have relied on the case as printed to establish the proper sum. That each party may have the benefit of exception to my report on this point, it may not be improper to state the grounds of it. The bill states the sum paid in cash at the time of the purchase somewhat indefinitely at nearly ten thousand dollars; and the further sum of two thousand five hundred and fifty-one dollars on one of the several notes given in part payment for the consideration of defendants' deed; and also the sum of three thousand three hundred and fourteen dollars on one of the Munroe notes, which they had undertaken to pay, and had secured by mortgage to the defendants, in all, the sum of $15,865. These being material averments and discovery in respect to them being called for in the bill, required a full and careful answer, and both defendants have concurred in their several answers as to the sums paid, and the time and mode of payment, and which are hereafter particularly set forth, the total amount of which payments by the complainants, exclusive of interest, is alleged to be $12,647.06. The complainants, however, insist that it appears from the testimony of Elias Bullard, that they paid an additional sum of $2,200, but it seems to me that the testimony of Bullard on this point fails to establish the fact of any other payments than those particularly set forth in the answers.

"I therefore find the whole sum paid by complainants on account of the contract rescinded by the decree, to have been twelve thousand six hundred forty-seven dollars and six cents. I further find that said Crosby received or had the benefit of one-sixth part of the amount of the first payment by complainants to the defendants, and of the sum paid by complainants to Munroe; and that said Brastow received, retained and had the benefit of one-sixth part of said first payment, two-sixth part of the payment to Munroe, (Brastow at the time of said payment having become the owner of Boynton's share,) and for one-half the payment to said Brastow on Aug. 28, 1836, (said Brastow at that time having purchased Crosby's interest in addition to Boynton's, in the complainant's notes and mortgage,) and that each is chargeable with interest on those sums or proportions respectively, and which I have cast to May 1, 1847, and to be computed on the principal sums from said day to final judgment.

"Upon the foregoing principles, I find there is due from James Crosby to the complainants the sum of two thousand eight hundred fifty-seven dollars and eighteen cents, and no more, as per Schedule A; that there is due from the estate of the defendant, Deodat Brastow, deceased, the sum of five thousand nine hundred and fifty-eight dollars and twenty-two cents, and no more, as per Schedule B hereto annexed.

"All of which is respectfully submitted.
"Bangor, May 1, 1847.
    "Fred. Hobbs, Master in Chancery."

Schedule A, referred to in this report, contains a statement of the moneys paid by the complainants to and for the use of James Crosby, one of said defendants, or received by him and not paid to others interested in the premises at the time of the sale to the complainants, viz.:

| | |
|---|---|
| This sum paid Sept. 21, 1835, to wit, one-sixth of $6,275.40, or........ | $1,045 90 |
| Interest on the same from Sept. 21, 1835, to May 1, 1847............ | 728 54 |
| This sum paid Munroe April 24, 1836, whole am't $3,910.80, one-sixth is..................... | 651 80 |
| Interest on the same from April 24, 1836, to May 1, 1847........... | 430 94 |
| | $2,857 18 |

May 1, 1847.
              Fred. Hobbs, Master.

Schedule B, referred to in this report, contains a statement of the moneys paid by the complainants to Deodat Brastow and for his benefit; or received and retained by him, and not paid to others interested in the premises at the time of the sale to the complainants, viz.:

This sum paid Sept. 21, 1835, to wit,
  one-sixth of $6,275.40, or......... $1,045 90
Interest on the same from Sept. 21.
  1835, to May 1, 1847..........      728 54
This sum paid Munroe April 24,
  1836. $3,910.80, two-sixths is.....  1,303 60
Interest on the same from April 24,
  1836, to May 1, 1847...........     861 88
This sum paid Brastow, Aug. 28,
  1836, $2,460.86, one-half is.......  1,230 43
Interest on the same from Aug. 28,
  1836, to May 1, 1847...........     787 87
                                     ─────────
                                     $5,958 22

May 1, 1847.
                          Fred. Hobbs, Master.

To this report the respondents filed several exceptions, with a written argument attached to each. A copy of the exceptions, without the arguments, is annexed:

"Maine. ss. Circuit Court U. S. in Equity.
"Horatio Mason et al. v. James Crosby et al.

"Exceptions taken by the complainants to the report of Frederick Hobbs, Esq., one of the masters in this honorable court, bearing date the first day of May, A. D., 1847, and filed in court the ——— day of the same May, made in this cause, to whom the same stood referred by the decretal order bearing date the ——— day of October, A. D., 1847:

"First—Because said master, in and by his report, certified 'that the defendants received of the complainants, in payment for said land, the sum of $12,647.06, and no more.'

"Second—Because said master, by his said report, has certified $3,537.77 as interest due up to the 1st of said May upon said money paid by complainants.

"Third—Because said master has, by his report, certified that defendant Crosby was bound to refund to the complainants the sum of $2,857.18, and no more.

To wit, the principal sum received
  by him........................ $1,697 70
Interest upon the same............  1,150 48
                                   ─────────
                                   $2,857 18

"Fourth—Because said master, as appears by his report, 'did not feel at liberty to give effect to evidence adduced by the complainants,' upon a supposition that the court, by said decree, had conclusively settled, as a fact, that said Porter, Thurston, Brazier Brastow, Wilson and Boynton were equitably interested in lands at the time of said sale, and that he had no right to enquire whether such were the case or not.

"Fifth—Because said master, in his said report, makes no distinction between transactions between the defendants themselves, and between defendants and others prior to and after said sale, and treats the said Porter, Thurston, Brazier Brastow, Wilson and Boynton as though all the obligations between them and the defendants existed prior to and at the time of the sale."

These exceptions and the report were also accompanied by a statement of the new evidence laid before the master; and an exhibit of the claims and offers made before him by each party as to all the matters in dispute. These, when important, will be explained in the opinion of the court. The original complainants moved also for leave, on this hearing. to submit further evidence in support of these exceptions, which leave was not granted.

Mr. Bishop, in support of them.

W. P. Fessenden and Mr. Kent, against them.

WOODBURY, Circuit Justice. At the hearing of the exceptions in this case, a motion to introduce further evidence in their support was made by the complainants, and overruled. But if that disposition of it had, on maturer consideration, been found to be improper, we would still admit the evidence before deciding on the exceptions. But we think the ruling was right under all the circumstances. Because the further evidence was offered without any previous notice to the opposite party of a wish to offer more proof, or of a willingness that more might be adduced by them. The court, therefore, decided that the evidence could not be admitted without granting a like privilege to the other side, and allowing time to improve the privilege thus granted, and that, on such terms of mutuality and time allowed, it might be admitted. The plaintiffs objected to this indulgence to the other side, and hence we still think they were rightfully precluded from doing what they did not consent their antagonists should be allowed time to do.

In respect to the exceptions themselves, most of them seem chiefly to rest on an impression that the court, when a master's report is returned, should retry and reëxamine and decide on all the questions of fact, as well as law, raised before the master. But we regard the office of a master in chancery somewhat like that of a jury in the courts of common law. Originally there were twelve masters in number, and their duties were not only limited, in the progress of time, to matters of fact, but chiefly to those of mere debt and credit, and computation of interest. 1 Spence, Eq. Jur. When they have once decided on these facts, and no legal question is involved in them, their report should stand probably without amendment here, or without recommitment, unless reasons exist for either, as strong as will justify setting aside a verdict. If there has been a clear mistake, or a palpable abuse of power, either of them ought to be corrected. But if the court should enquire or act beyond that, as to matters of fact, the office of master would prove but little aid in the administration of justice—the court being compelled to go over all the facts again, and thus their labors be greatly and unnecessarily increased. When a party has enjoyed one full hearing as to the facts involved in his claims of debt, credit, interest and kindred topics, there seems little justification for going into another, unless the master has clearly fallen into a mistake, or clear-

ly abused the power confided to him. Without such a limitation, no prospect would exist of putting an end to litigation.

Proceeding to the examination of the different exceptions, with these views, our conclusions are, that judgment must be rendered in conformity to the report.

The first exception is, in substance, that the whole sum received by the defendants of the plaintiffs in money, was larger than that found by the master. But this was a fact involving no principle of law, and concerning which the testimony on the points in doubt was contradictory. The evidence, in one view of the subject, showed more, and in another view, near the amount found by the master. The probability seems to be, that if the plaintiffs paid more than $6,275, the sum allowed by the master, it was in the course of the business paid to Fifield, and not retained by the respondents; and that the notes to Fifield, and endorsed by him, were substituted for any money beyond that sum. After the lapse of eleven or twelve years. the truth is not likely to be attainable with much exactness, and this delay is so much more the fault of the plaintiffs in this case, than of the respondents, as to have formerly caused a decree, in some respects less favorable to them than it otherwise would have been. Not taking a receipt or some written evidences of the amount of money paid by them at the time of the sale, whether to the respondents or Fifield, (which is the chief cause of the difficulty on this point,) is another neglect on their part, the consequences of which must fall, rather on them than the defendants. It is the business of the former, rather than the latter, to remove doubts and uncertainties as to the larger amount claimed. Not doing this, and there being evidence to justify either view, the master has allowed the smaller sum; and we do not see enough in the case to warrant a belief that it has been done through any clear mistake, or abuse of power.

The second exception is merely a branch of the first, being that the interest allowed is not sufficient for the whole principal paid. It falls with the first exception, as the interest is enough in amount; if the principal allowed was probably enough, and we have already decided that it was, in respect to this item.

The third exception raises a question of law, rather than fact, since it contends that the defendant Crosby is not charged with enough in other respects, as he is allowed payments made before the bill was filed to other persons claiming to possess an interest in the land at the time of the sale in 1835 to the plaintiffs, when, in truth, the plaintiffs argued that those other persons then possessed neither an equitable nor legal interest in the premises, sufficient, in law, to justify such payments. But the fact is undoubted that they claimed some interest there; that the claim was then admitted by the respond-ents; that even the complainants alleged in their bill the existence of such interests, but without knowing the names of the parties; that the respondents gave their names and proportions of interests in their answers, and that the only question made in this matter at the hearing, was whether an interest like theirs, not by deed, but by bond in most of the cases, made it imperative on the plaintiffs to join them all as defendants in the bill.

Now, although several of the matters in the answers as to this may be not precisely responsive to the bill,—8 Cow. 387; 1 Johns. Ch. 580; 2 Johns. Ch. 88; 3 Blackf. 18; 8 Pick. 113; 4 Paige, 22; 15 Me. 125; Randall v. Phillips [Case No. 11,555],—and a bill with no formal interrogatories renders it more difficult to decide, with exactness, what is and what is not responsive, yet there is other evidence than these answers that these persons were interested. That was the, first step to be proved, before considering its effect. That was amply shown, without the answer, by the bond from the respondents to Smith, which had been assigned to most of those persons claiming an interest; next, by the bond of most of them given to pay their proportions of the original consideration for the land to Munroe; next, by the active part some of them took in getting certificates and an agent to make this new sale; next, by the testimony of most of them, on the stand, in support of their interest; and finally, by the allegations in the bill, and the grounds taken at the hearing and in the decree. It cannot be set up by any persons, that such a bond did not, in law, give an equitable interest, for want of consideration, when it is a sealed instrument. Or, in the case of Boynton, (one of them not. included in the assignment of the bond,) that his interest was by parol, and without consideration, or was not mutual, when he procured one of the defendants to make the advances for him, and when the contract has already been executed, and this objection comes afterwards from a third person, and not a party to the agreement. See Tufts v. Tufts [Case No. 14,233], Mass. Dist., Oct. term, 1847.

An executed contract, though without consideration, mutuality or writing, to take it out of the statute of frauds, cannot afterwards be objected to by third persons, if it can be by the parties, however the latter may object while it is executing. And where one has stipulated to allow another an interest in certain premises, and admits, in his answer, that the interest was a just one, and this interest has since been recognized and executed, it is too late for other persons to object to the legal or equitable propriety of it, and on that account to attempt to avoid it. See cases in Tufts v. Tufts [supra]. It will not do in chancery to consider it unconscientious or unjust to treat such an interest as valid, when the parties to it have not chosen to make any objection, either on technical or substantial grounds. Nor would this decision, exonerat-

ing the defendants from what they had paid to others interested with them at the sale, and done many years before the present suit, and some time before any offer to rescind the sale by the plaintiffs, be at all injurious to the plaintiffs, if they exercised proper vigilance and diligence. These third persons could have been separately prosecuted early, and the due shares of money received from them, rather than the respondents. Or even in this bill, after their names and respective amounts of interests and money received, had been disclosed by the respondents, they could, as was requested, have been made co-defendants, and their proportions recovered back.

Considering the interests of all these other persons beside the defendants, to whom parts of the consideration were paid at the time as proved by testimony and circumstances, even without the aid of the answers of the defendants, it becomes of little importance what in them is or is not responsive on this point, and the only remaining objection under this exception is to the want of proper evidence to show actual payments made to these subclaimants to the extent of their interests. The evidence, as to that, consists, also, in part, of matter in the answers. Those are very clear to prove the payment and were not contested at the hearing of the original cause, but are now objected to as incompetent to prove them. Even now, they can separately be proceeded against, and made liable, unless the neglect of the plaintiffs has been such as to exonerate them, or they have some other valid defence. So if the defendants had been sued earlier, and the contract rescinded earlier, less harm or injustice would have happened in making them chargeable for all which went into their hands at first, as their resort over to others receiving it from them, might have thus been more early and successful, while by such delay their remedy over would probably now, in most instances, be worthless. It is probable that some of the answers in respect to this last fact, also, may not be exactly responsive to the bill, and might not alone suffice. Looking, however, to the other testimony, there seems little doubt from that. The oaths of Boynton, himself, Thurston, Porter and others, before the master, and the bond given by most of them to pay their portions of the original consideration, and the fact already and otherwise established, that they were interested in the land in certain proportions, are strong to show that they have been paid all to which they were entitled. The very lapse of time which was before referred to, being so long, and no existing claim being made of a failure to pay any of them, coupled with the continued ability of, at least, one of the defendants, to comply with their obligations, is quite decisive that the payments have been adjusted in conformity with the promises and right which really existed.

There is a further exception taken by the plaintiffs, that the defendants are not charged with the whole of $3,910, which the plaintiffs paid for them to Munroe. They were charged with only such portions of it as their interests required them in the end to pay. This, we think, was sufficient. They held the whole legal title to the land by deed, and gave their notes for the whole consideration. When they sold it for all interested, and paid over to others the proportions of the money received, it was proper, as the original consideration was not yet due, to take from the others' obligations to pay their ratio of it. They thus stood in the capacity of trustees, both for buying and selling, and all they did, in these respects, was not for themselves alone, owning but portions, or for themselves as joint obligors. It was rather for all possessing an interest in the premises. And when they received the $3,910, and paid it over to Munroe, as that was the substance of the transaction, it being paid by the plaintiffs for them, they received as well as paid it for all in their due proportions, and are liable individually for only the shares they themselves owned, or were bound to pay. Only that was to go to their real and final benefit, and that they are required to restore. As to the residue, when they collected money of the others to help pay for that, (which was owing to Munroe, and which they alone were bound to him to advance,) they collected only the portions which remained due from the others after applying their share of the $3,910. They hence cannot be considered as recovering back anything of this $3,910, but receiving the balance due from the others interested, after allowing to them their share in that sum paid by the plaintiffs.

The fourth exception is founded on the idea, that the master took for granted, as if already settled by the decree, what he ought to have decided on evidence offered before him, i. e. the interest of these particular claimants under the defendants. Now, although the fact of an interest in third persons had been alleged in the bill itself, and admitted in the answer, and proved by various testimony, yet I am not aware that the names of those possessing such an interest, or their exact proportions, were shown with precision, except in answers. And as those answers may not, in these respects, have been responsive to the bill, it would have been proper for the master to have resorted to other evidence for these particulars. The decree did not decide who in fact were the particular claimants, and their proportions, as it was not necessary, in order to decide on the merits. Again, it did not seem to be controverted, that these persons named by the master were the persons, and had the proportions in the sub-claim under the defendants, which both sides conceded to exist.

Has this view of the master, then, if to some extent erroneous, led to any error or mistake in the results? That is not pretended. All the evidence and circumstances concurred in support of that interest, and it is well settled, as to errors in ruling on evidence

by courts, that if it do not appear to have changed the verdict from what it would otherwise be, a new trial will not be awarded. Allen v. Blunt [Case No. 217]; Taylor v. Carpenter [Id. 13,785]; and cases cited in them.

The fifth and last objection is, that the master does not distinguish between rights and obligations of the defendants or transactions of theirs with others after the sale of the land, and those before. But this, I apprehend, is misunderstood. The master does not appear to have taken the interests or duties of the parties for a guide, as they stood at any other time than the sale, though he may, and properly has, looked to their transactions afterwards, as in pursuance and in affirmance of those previous interests and duties. And at times they may be some evidence of what the prior contracts and interests had been, and therefore deserve attention in that view. But we see no instance of the master's making any new arrangement after the sale, a test or standard of any old obligations. The new bond, given by the sub-claimants after the sale, to pay their proportion of the original consideration to Munroe, if not paid by the plaintiffs, is the new contract or transaction which is probably meant to be referred to. But that was only a new form of securing what was their duty before to accomplish, i. e. the payment of that portion of the consideration to be paid for the land, which their share in the land rendered proper. The duty to pay that existed from the time their interest existed, and the new bond was only a new evidence or new security concerning it.

Judgment according to the report on the decree.