CONTINUOUS GLASS PRESS CO. v. SCHMERTZ WIRE GLASS CO. et al.

(Circuit Court of Appeals, Third Circuit. January 8, 1915.)

No. 1896.

1. PATENTS ⬥318—INFRINGEMENT—ACCOUNTING FOR PROFITS.

On an accounting for profits of infringement of a process patent, the defendant is entitled to credit for the total cost of the product made by him, and is chargeable with the proceeds of its sale; but he must account for all the product so made, and is not entitled to credit for the cost of production of any part not accounted for.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 566–576; Dec. Dig. ⬥318.

Accounting by infringer of patent for profits, see notes to Brickill v. Mayor, etc., of City of New York, 50 C. C. A. 8; Clark v. Johnson, 120 C. C. A. 389.]

2. PATENTS ⬥322—ACCOUNTING FOR PROFITS OF INFRINGEMENT—FINDINGS OF MASTER.

In considering exceptions to a master's report on matters of fact affecting the accuracy of his findings in respect to profits, gains, and savings made by the use of an infringing apparatus or process, the conclusions of the master, depending on the weighing of conflicting testimony, have every reasonable presumption in their favor, and are not to be set aside or modified, unless there clearly appears to have been error or mistake on his part.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 590–595; Dec. Dig. ⬥322.]

3. PATENTS ⬥319—INFRINGEMENT—COMPUTATION OF DAMAGES.

On an accounting for damages for infringement of apparatus and process patents, where the price at which the infringing product was produced by both complainant and defendant was stipulated, but it appeared that complainant procured its product to be made by another, for which it paid a fixed price, such cost price must be taken as the basis for computing its damages.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 577–586; Dec. Dig. ⬥319.]

Appeal from the District Court of the United States for the Western District of Pennsylvania; Joseph Buffington, Judge.

Suit by the Schmertz Wire Glass Company and the Mississippi Wire Glass Company against the Continuous Glass Press Company. Decree for complainants, and defendant appeals. Modified and affirmed.

For opinion below, see 216 Fed. 828.

A. B. Stoughton, of Philadelphia, Pa., for appellant.

Drury W. Cooper and Arthur J. Baldwin, both of New York City, for appellees.

Before McPHERSON, HUNT, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. This is an appeal from the final decree entered against the defendant in two suits for infringement of patents owned by the complainant, for apparatus and process for the manufacture of wire glass. The court held the patents valid and infringed, and, upon a revision of the master's finding, ascertained profits made by the defendant from its infringement in the amount of $7,835.35, and damages to the complainants in the amount of $15,812.81, and awarded judgment thereon against the defendant for the total sum of $23,648.16, with interest thereon at the rate of 6 per centum per annum from the 21st day of October, 1913, and allowed to the complainants their costs of the actions, including the costs of the proceedings before the master.

The questions presented for review pertain only to the parts of the decree awarding profits, damages, and costs.

The Schmertz patents covered apparatus and process for the manufacture of polished wire glass, which, after litigation extending over a period of 18 years, were held to be valid. To produce polished wire glass, the defendant employed an apparatus and process which were charged, and have since been held, to infringe the patents of Schmertz. In making polished wire glass by either process, the first product is a sheet or pane of glass, into the central plane of which a sheet of wire fabric has been introduced during its manufacture. This sheet of glass is rough, and is known as unpolished wire glass. To complete the process, the rough sheet is ground and polished, and then becomes the finished product, and is known as polished wire glass. In response to questions propounded at the hearing under the order of the court for an accounting, officers of the defendant company disclosed the quantity of glass of both kinds produced by the infringing process and the disposition of a portion thereof, by statements consisting of tables of figures. These statements form the bases upon which the master made his several findings; and as they are very complicated, they will be rearranged in an effort to produce simplicity, adhering, of course, to the precise figures given.

By its first statement, the defendant showed the quantity of rough or unpolished glass produced by the infringing process and the manner of its disposition, measured by square feet, the substance of which is as follows:

#### Unpolished Wire Glass.

| | | |
|---|---:|---:|
| Total amount produced | | 80,983 feet |
| Amount sold | 3,728 feet | |
| Amount used for polishing | 65,871 " | |
| Amount on hand | 1,950 " | |
| Amount unaccounted for | 9,433 " | |
| | 80,983 feet | 80,983 feet |

Thus is shown the quantity of rough or unpolished wire glass produced, and what was done with it, excepting the last item of 9,433 feet "unaccounted for."

From the 65,871 feet of rough glass "used for polishing," it appears from the defendant's tabulated statement that but 57,318 feet of polished glass were produced, the difference between the two figures being waste, for which no claim was made by complainants either as profits or damages.

The total product of polished wire glass and the disposition of it appear by another tabulated statement of the defendant, as follows:

#### Polished Wire Glass.

| | | |
|---|---:|---:|
| Polished wire glass made | | 13,940 feet |
| "        "      "    " | | 13,507 " |
| "        "      "    " | | 29,871 " |
| Polished wire glass sold | 36,200 feet | |
| Polished wire glass on hand | 8,886 " | |
| | | |
| Total polished wire glass sold and on hand | 45,086 feet | |
| Polished wire glass unaccounted for | 12,232 " | |
| | 57,318 feet | 57,318 feet |

The important figures in this statement are 57,318 feet, the total amount of polished glass *made* by the infringing process; 36,200 feet, the amount of polished glass *sold*; 8,886 feet, the amount of polished glass "on hand"; and 12,232 feet, the amount of polished glass "unaccounted for." The figures of these two tables constitute the whole evidence in the case of the quantity of unpolished and polished wire glass produced by the infringing process. They were undisputed and were accepted by both parties as proper figures upon which to base a calculation of profits.

With respect to the cost of producing wire glass, the parties stipulated, for the purposes of this accounting, that the cost to each of producing one-half inch wire glass (unpolished) was 15 cents per square foot, and the cost of grinding and polishing the same was 18.79 cents per square foot, making the cost of producing the finished product 33.79 cents per square foot.

As additional data upon the cost of production, as well as upon returns from sales, the defendant produced testimony, which was undisputed, and therefore entered into the master's calculations, that the cost of making all the glass, polished as well as unpolished, unaccounted for as well as accounted for, merchantable as well as waste, aggregating 80,983 feet, amounted to the sum of $26,085.99, and that the total receipts from the sale of 36,200 feet of polished glass, which was all the polished glass that was sold, amounted to but $25,370.62, there-

by causing the defendant a loss of $715.37. The defendant therefore claimed that, as it made no profits by the infringing process, it was not chargeable for profits.

With the deduction of a loss made by the defendant from its figures, based upon the two items of cost of total production and cash returns from sale of a part, the master did not agree, but found, under the evidence, that the defendant, both upon its own showing and upon examination of its officers as witnesses, had failed satisfactorily to account for a very considerable portion of the unpolished and polished glass which it admitted to have produced, and, upon the theory that an infringer must account for the disposition of all the product manufactured, held that, as it had credited itself in the total cost item of $26,085.99 with the cost of producing the unaccounted for portion, it was chargeable with a like amount as unaccounted for profits, as follows:

| | | |
|---|---|---|
| Unpolished glass "unaccounted for," 9,433 feet at 15 cents | $1,414 | 95 |
| Polished wire glass "on hand," 8,886 feet at 33.79 cents | 3,002 | 58 |
| Polished wire glass "unaccounted for," 12,232 feet at 33.79 cents | 4,133 | 19 |
| Total | $8,550 | 72 |
| From this the referee deducted the apparent loss shown by the defendant's statement above referred to | 715 | 37 |
| Net profits | $7,835 | 35 |

The master's finding of profits was approved by the District Court, and the decree of the court was attacked upon the ground that, in the ascertainment of an infringer's profits, the infringer is not chargeable with material manufactured but not sold, or in any way a source of saving or income or remaining an asset to the infringer.

Against this contention as an abstract proposition, unrelated to the facts of this case, very little need be said. The infringer in this case is chargeable only for profits actually made and not for profits which it might have made. In ascertaining profits, the element of cost must enter—not merely the cost of manufacturing the part of the product sold, but the cost of manufacturing the whole product—and when the part of the product unsold is satisfactorily accounted for by the infringer, showing that it was not converted into money or other thing from which profits might properly be calculated, then the cost of producing the whole is set off against the returns from the sale of the portion sold, and a profit or loss is deduced. This rule, however, is to be applied only when the infringer makes a disclosure of his transactions of production and disposition, with the fullness and completeness required of a trustee accounting for the property of his cestui que trust, for the generic rule for ascertaining the amount of profits recoverable in equity for the infringement of a patent is that of treating the infringer as though he were a trustee for the patentee, in respect to the profits which he realized from his infringement. Walker on Patents, § 715.

In the case under consideration, the defendant primarily is entitled to credit for the cost of making all the glass it manufactured by the infringing process. The quantity produced is fixed, and the cost of its

production is known. In order, however, to maintain its right to a credit for the cost of producing the whole, the defendant must show what it did with the whole, and, if converted into money, what it received from its sale. If it shows an amount produced in excess of the amount sold, it must make a satisfactory accounting for the amount unsold; that is, it must make a satisfactory disclosure that it has not been turned into money or other thing from which profits might be calculated. While the defendant is entitled to a full credit for the cost of all that it made when it renders a satisfactory account of the disposition of all, it cannot make and keep a credit for the cost of making all when it accounts only for a part. Craving a credit for the cost of making a given quantity of the product, the defendant must account for the disposition of that quantity. If a part was waste, the cost of making the waste should not be deducted from the cost of making the whole, for the cost of producing waste was an ingredient in the cost of producing the resultant finished product, to the benefit of a credit for which, as against the profits to be charged to it, the defendant is entitled. But to have and maintain a credit for producing waste, the defendant must show first that waste was produced, and, second, the quantity of it, otherwise the defendant must be charged with the value of the product unaccounted for, at least in the precise amount which the defendant appropriates to itself a credit for producing it. What did the master find as matters of fact?

[1] In disclosing the disposition it made of the two grades of glass produced by it, as shown by the figures previously tabulated, the defendant returned 9,433 feet of unpolished glass and 12,232 feet of polished glass "unaccounted for" and 8,886 feet of polished glass "on hand." The last two items aggregate 21,118 feet, which, together with the 36,200 feet sold, aggregate the 57,318 feet, which comprised all the polished glass made. The item of 9,433 feet is an additional item of glass "unaccounted for," making an accounting of 36,200 feet sold and 30,551 feet unsold, and denominated "unaccounted for" and "on hand." The master found that the 8,886 feet of polished glass reported on hand was not waste, nor had it been culleted, but on a given date was received in stock as finished product. After its receipt there is nothing to show what became of it, and therefore it is a portion of the product as completely unaccounted for as the glass expressly classified by that expression. This item, with the other two last mentioned, makes 30,551 feet of glass admittedly made by the infringing process, for the disposition of which the defendant gave no satisfactory explanation. The master did not hold that these three items, aggregating 30,551 feet, unsold and not converted into money, constituted profits, within the meaning given by the law to that term, but held in effect that there were 30,551 feet of glass, other than waste, made by the infringing process, for which the defendant did not account; that the defendant kept no separate books of account for the infringing business, nor did it keep the product of the infringement separate from the noninfringing products of its factory, but commingled the two together; that evidence of the extent and character of the glass produced by the infringing process and of its disposition was mainly, if not exclusively, within the knowledge and power of the

defendant, which, in face of its duty, it failed to produce. Therefore the cost of manufacturing the 30,551 feet which stand unaccounted for, and to a credit for the cost of manufacturing which the defendant is not entitled, should be subtracted from the cost of manufacturing the whole. This calculation results in the same figures found by the master, as follows:

| | |
|---|---:|
| Cost of manufacturing all glass, 80,983 feet | $26,085 99 |
| Cost of manufacturing glass "on hand," and "unaccounted for," 30,551 feet | 8,550 72 |
| Cost of manufacturing glass accounted for | $17,535 27 |
| Total amount received from "sales" of glass | $25,370 62 |
| Total cost of glass accounted for | 17,535 27 |
| The amount of profit found by master | $ 7,835 35 |

The defendant attacks this method of calculation and maintains that it not only inflicts injustice but presents an absurdity. Briefly put, the defendant says the master and the court treated the making of the "glass sold" and the making of the "glass unsold" as two distinct operations, and that from the "glass sold" a profit was made, which profit was expended in making the "glass unsold," and the quantity of glass "unsold" was therefore "charged" as a "profit" against the defendant. From this process of calculation, the absurdity is deduced:

"That, if the respondent is to be charged in the item of profit with the cost of the glass *unsold*, then the greater the amount of glass *unsold*, and from which the respondent received nothing whatever of value, the greater the profit which the complainant would assert the respondent made and was liable for. In other words, the greater the loss to the respondent, the greater the profit to the complainant."

We find nothing in the method of the master's calculation of profits to warrant this deduction, and we think the defendant has missed the point of the master's award.

Instead of treating the transaction as one separable into two parts, "sold" and "unsold" glass, we find the master treated the *production* of 80,983 feet of glass as one indivisible and inseparable transaction. He then treated the *disposition* of this quantity of glass as divisible and separable into two parts, not into "sold" and "unsold," but into "accounted for" and "unaccounted for." He allowed the defendant all it asked for all it "accounted for," including what was sold and what was waste, but declined to allow it what it claimed for what it had not "accounted for." The defendant did not wait to ask the master for an allowance for making the glass "unaccounted for," but appropriated or took to itself a credit of $8,550.72 for making 30,551 feet of glass, which, upon its own showing, had somewhere, somehow, and at some time disappeared. The master in effect said, "I will not allow you to keep that credit unless you satisfactorily show me what you have done with that glass;" and as this it failed to do, the master took that credit away from the defendant by charging or debiting against it a like amount, leaving for subsequent calculation only the known factors of glass accounted for, its cost, and the amount of money received from sales. In this we see neither absurdity nor error.

It has been suggested that the logic of the case might require the defendant to be charged with the selling price rather than with the cost of the unaccounted for product. As an abstract proposition, this is not without force; but in the case with which we are dealing, the complainant did not urge nor did the master find that the infringer should be so charged, and no error was assigned that raises that question.

This case is not without its hardship. It is impossible to award the complainant the precise amount of profits to which it is entitled. It is likewise impossible to formulate a decree against the defendant as to profits, without the hazard of inequity. These difficulties are due to the incomplete state of the evidence, and the incomplete state of the evidence is due to the natural difficulty of the complainant to produce evidence of profits which was almost wholly within the possession of the defendant, and the failure of the defendant to fairly and fully disclose what it did with its product. The master evidently strove to make an equitable finding upon the facts before him, in doing which he was controlled by the rule laid down in the case of Westinghouse v. Wagner, 225 U. S. 618 to 620, 32 Sup. Ct. 691, 56 L. Ed. 1222, 41 L. R. A. (N. S.) 653, which recognized the duty of an infringer to account for the profits of his infringement, and that loss must be placed upon the wrongdoer, when, in the alternative, loss must fall either upon him or upon the innocent. Directed by this rule, the master made his findings of fact and his award.

[2] It is well settled that in considering exceptions taken to a master's report in matters of fact, affecting the accuracy of his findings in respect to profits, gains and savings made by the use of an infringing apparatus or process, the conclusions of the master, depending upon the weighing of conflicting testimony, have every reasonable presumption in their favor, and are not to be set aside or modified, unless there clearly appears to have been error or mistake on his part. Tilghman v. Proctor, 125 U. S. 136, 149, 150, 8 Sup. Ct. 894, 31 L. Ed. 664; Medsker v. Bonebrake, 108 U. S. 66, 2 Sup. Ct. 351, 27 L. Ed. 654; Donnell v. Columbian Ins. Co., 2 Sumn. 366, 371; Mason v. Crosby, 3 Woodb. & M. 258, 269; Paddock v. Commercial Ins. Co., 104 Mass. 521, 531; Richards v. Todd, 127 Mass. 167, 172; Callaghan v. Myers, 128 U. S. 666, 9 Sup. Ct. 177, 32 L. Ed. 547; Crawford v. Neal, 144 U. S. 596, 12 Sup. Ct. 759, 36 L. Ed. 552; Davis v. Schwartz, 155 U. S. 636, 15 Sup. Ct. 237, 39 L. Ed. 289; Girard Insurance Co. v. Cooper, 162 U. S. 538, 16 Sup. Ct. 879, 40 L. Ed. 1062.

In the master's finding of fact respecting profits, there appears neither clear error nor mistake, and in his ascertainment of the legal responsibility of the defendant for an accounting for profits, under the facts as disclosed by the testimony, we find no error in law. It occurs to us, however, that a less involved and more direct method of ascertaining profits, one in strict harmony with the rule upon the subject, might have been employed, resulting possibly in a different amount. But as the method followed was based upon the complainant's theory of profits, concerning which, of course, no complaint could have been made nor error assigned by it, and as the other conceivable theory was of course not urged by the defendant nor error assigned for failing to pursue the same, the case is decided upon the record as made, and,

from the record as made, we are satisfied there exists no error of which either party can complain.

[3] The next question charged as error to the court below relates to the master's finding on the matter of damages and to the modification of that finding by the court. There are several grounds suggested for error, one of which merits serious consideration.

There is no doubt that, if the defendant had not manufactured the glass in question, the complainant would have produced and sold to its own profit an equal amount, for the complainant and the defendant at that time were the only manufacturers of this product. In order to ascertain damages, two stipulations were entered into, the first of which related to the cost of production, and the second of which related to the price at which the kinds and sizes of glass were sold. The first stipulation is as follows:

"It is stipulated between the parties that, for the purpose of this accounting, the cost to the complainant of producing one-half inch wire glass is the same as that of the defendant, namely, 15 cents per square foot, and the cost of grinding and polishing is the same as that of the defendant, namely, 18.79 cents per square foot. This cost is the cost of producing stock sheets and take no account of loss resulting from cutting to size."

The figures contained in this stipulation would have been taken by the master as the basis of his calculation of cost, but for the fact that it subsequently appeared in the testimony that the plaintiff did not *produce* its own polished glass, but *purchased* the same from another corporation. The price at which it purchased polished glass was 40 cents a square foot. The master, therefore, disregarded the stipulation of 33.79 cents a square foot as the complainant's cost of producing polished glass, and made his estimate at the rate of 40 cents a square foot. He did this upon the theory that the stipulation as to the complainant could have no force in this case, because, when made, it was predicated upon an assumption of a fact which afterwards was proven did not exist, namely, that the complainant *produced* its own glass, and that the stipulation could not stand, nor should the calculation of damages be based upon its figures, in view of the subsequent and uncontradicted testimony that glass purchased by the complainant during the period in controversy really cost the complainant 40 cents. The master made his finding accordingly. Upon exception, the court modified the finding of the master in his calculation of damages, and held that the stipulation was made to fix facts, and by the facts as fixed, the master was bound.

The evidence subsequent to the stipulation established as a fact what it cost the complainant to *procure* rather than *produce* its glass, and that it did not produce but procured its glass elsewhere, and thereby fixed to a certainty, we think, the cost figure by which the master was bound to base his calculation of the complainant's damage. The master calculated damages upon the quantities of glass of both kinds admitted by the defendant to have been made and sold by it, from selling prices agreed to by another stipulation, and the cost price at which it was proven and admitted that the complainant could have procured the same.

It is therefore ordered that the decree of the court awarding damages in the amount of $15,812.81 be modified and made to conform to the damages awarded by the master in the amount of $13,564,85, and, when so modified, the decree in all other respects be affirmed, with costs.