## MACBETH–EVANS GLASS CO. v. L. E. SMITH GLASS CO.

## L. E. SMITH GLASS CO. v. MACBETH–EVANS GLASS CO.

Circuit Court of Appeals, Third Circuit. December 27, 1927.

Nos. 3650, 3651.

1. **Patents** ⬅318(6)—**Factory cost of infringing article as carried on infringer's books held properly taken as basis for calculating infringing profits.**

In patent accounting for infringing profits, factory cost of infringing article as carried by infringer on its books, and on which figure it had reckoned profits and paid taxes, was properly taken as basis for calculating infringing profits.

2. **Patents** ⬅318(6)—**Bonus paid by infringer in good faith as compensation for service was properly included in cost of business.**

In patent accounting for infringing profits, bonus paid by infringer in good faith as compensation for service was properly added to costs of business.

3. **Patents** ⬅318(3)—**Under "standard of comparison," measure of profits derived from an infringing use is infringer's gain or saving.**

Under rule of "standard of comparison," primarily the measure of profits derived from an infringing use is infringer's gain or saving, which in turn is determined by comparing cost of production by infringing use with cost of production by another machine or process when such exists.

4. **Patents** ⬅318(6)—**Infringer cannot claim credit for cost of manufacturing infringing articles remaining on hand, where infringer was not charged with profits on such remaining articles.**

In patent accounting for infringing profits, since infringer was not charged with any profits on infringing articles remaining on hand unsold at end of infringing period, it cannot claim credit for their cost of manufacture in reduction of profits derived from articles sold.

5. **Patents** ⬅318(6)—**Allowance to infringer of sum to represent actual investment, in addition to factory cost, held properly refused.**

In patent accounting for infringing profits, allowance of sum to represent infringer's actual investment, in addition to factory cost of infringing article, was properly refused, in absence of evidence in support thereof.

6. **Patents** ⬅318(6)—**Federal taxes paid on infringing profits should be deducted in ascertaining infringing profits.**

In patent accounting for infringing profits, federal taxes paid by infringer on its infringing

profits should be deducted in ascertaining infringing profits.

Appeal from the District Court of the United States for the Western District of Pennsylvania; W. H. Seward Thomson, Judge.

Patent infringement suit by the Macbeth-Evans Glass Company against the L. E. Smith Glass Company. From the decree on exceptions to report of master appointed to make an accounting (21 F.[2d] 553), both parties appeal. Modified, and, when modified, decree affirmed.

Brown & Critchlow and Paul N. Critchlow, all of Pittsburgh, Pa., for Macbeth-Evans Glass Co.

Christy & Christy and Marshall A. Christy, all of Pittsburgh, Pa., for L. E. Smith Glass Co.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. The Macbeth-Evans patent (No. 1,342,744) is for a lamp lens with ridged and grooved surfaces surmounted by a colored vizor, at one time popular with automobile owners. After this court had held the patent valid (284 F. 193), the District Court, on interlocutory decree, found it infringed by the L. E. Smith violet ray lens of similar design and ordered an accounting. As the invention had to do with glass—an always troublesome subject in computing costs of manufacture and profits of sales—the accounting that followed touched many factors which were impossible of precise computation and, in consequence, provoked controversies at every turn. On these the master, aided by skilled accountants and by lawyers who displayed an admirable inclination to admit what was not disputable and to avoid disputes on non-essentials, expended much labor and produced a result which in the main has been approved. On exceptions to the master's report the learned trial court, after making a careful study of the testimony and contributing an illuminating discussion on the law, entered a decree which was highly unsatisfactory to both parties. 21 F.(2d) 553. Immediately there followed these cross-appeals, bringing the whole controversy here.

For an understanding of the invention of the patent we refer to the opinion of this court first cited, and for a statement of the facts produced and questions raised on the accounting we avail ourselves of the opinion of the trial court, next cited. Being almost wholly in accord with the reasoning and judgment of the learned trial judge, we shall merely state our conclusions on issues peculiar to the case and shall discuss only those matters which concern general law.

The questions involved in both appeals may be compressed into the statement following:

(1) What is the proper method of determining the factory cost per pair of infringing lenses?

(2) Whether the bonus, or a part of it, paid by defendant to certain of its officers and employees should be excluded from costs of manufacture in determining profits on sales of the infringing lenses.

(3) Whether (a) the cost of manufacture of unsold infringing lenses; (b) interest on investment; and (c) federal income taxes should be included as cost factors in determining profits from infringing sales.

As the purpose of the accounting was to find the profits the defendant had earned from the sale of the infringing product, the cost of the product became a matter of first importance. The books showed the selling price, but as the defendant manufactured many glass articles besides violet ray lenses, into all of which entered generally all costs of production, the books did not segregate and classify the cost of manufacturing the infringing product. That cost had to be found in some other way. It included many factors, among them the following:

(1) Factory cost; (2) packing and shipping cost; (3) selling and general expenses.

The accountants and attorneys were able to classify and in a measure agree upon the last two items, thus reducing the main controversy to the first, factory cost. But this item, in turn, covered seven unclassified items, namely, glass material, labor, fuel and water, factory expenses, repairs, freight and handling, depreciation.

It being evident that infringing profits were large or small according as factory costs were small or large, the plaintiff, seeking high profits, proceeded at the hearing on a theory of low factory costs that showed a net profit earned by the defendant of $84,402.42. The defendant, on the other hand, proceeded on a theory of high factory costs that indicated an apparent profit of only $34,277.93. The plaintiff then added various items to its estimate of the defendant's net profit and increased the total profit for infringing sales to the sum of $150,944.05. The defendant, quite consistent with its theory, made various deductions from its apparent profit until that

profit was converted into a loss of $28,075.79. Hence there was a span of more than $50,000 between the two methods of computing the seven unclassified factory costs and a difference between the final results of the opposing theories in an amount exceeding $179,000.

[1] All this was worked out from a mass of figures. The master, very much in the dark and navigating uncharted waters between these opposing headlands, accidentally—or perhaps incidentally—discovered a light toward which he set his course and to that course he stedfastly held. This was the fact, which came out in the testimony quite casually, that the defendant had all along carried the factory cost of the infringing lenses on its books at 40 cents per pair. On this figure of direct factory cost the defendant corporation, whose officers were intelligent and experienced men, had reckoned its profits, computed and paid its income and excess profits taxes to the government, compiled its inventories and made up its balance sheets. As to the accuracy of this figure, the defendant, who made it and then used it for all purposes with apparent honesty, can scarcely be heard to complain; nor can the plaintiff disturb this fact figure except by evidence of some other fact equally certain and more controlling. None was forthcoming. Both parties vigorously attack the use of this cost item in computing infringing profits because it wholly destroys both of their theories. Yet, as its presence on the defendant's books has not been questioned and as we think it points to the factory cost of manufacture more directly than any other evidence in the case, we find the referee and learned trial judge right in taking it as the basis for calculating infringing profits ultimately fixed by the decree at $69,580.02.

[2] The defendant paid a bonus to certain of its officers and employees and carried it not in the account of factory costs but in its selling and general expense account. The plaintiff attacks the bonus as a plan to hide and distribute infringing profits, and maintains, if so, moneys thus paid must be deducted from cost and added to profits. We find, in accord with the learned trial judge, that the bonus was a proper charge paid by the defendant in good faith as compensation for services and to avoid a general raise of salaries and wages then occurring everywhere by reason of business conditions following the war.

The defendant had on hand at the end of the infringing period a large number of infringing lenses for which there was no mar-

ket. As it cost as much to make a lens not sold as to make a lens sold, the defendant insisted at the hearing, and again on this appeal, that the cost of unsold lenses should be added to the cost of lenses sold and the net profits earned on the sold lenses be reduced correspondingly. It cited the decision of this court in Continuous Glass Press Co. v. Schmertz Wire Glass Co., 219 F. 199, and maintained, though conceding that it is contrary to all decisions on the subject rendered by other federal courts, notably Callaghan v. Myers, 128 U. S. 617, 664, 9 S. Ct. 177, 32 S. Ct. 547, Crosby v. Safety Valve, 141 U. S. 453, 12 S. Ct. 49, 35 L. Ed. 809, Canda Bros. v. Michigan Malleable (C. C. A.) 152 F. 178, Underwood v. Fox Typewriter (C. C. A.) 220 F. 880, that it established the law for this circuit. In making this contention, the defendant, we think, placed greater reliance on one paragraph of the opinion than on the opinion at large. However, that paragraph when read alone has, we confess, the appearance of supporting the contention. As it is worded in a way that caused the learned trial judge to pause and that prompted the attorney for the defendant (whose intellectual honesty this court has repeatedly observed) to rest his case on it, we feel that the thought intended to be conveyed must be badly stated and that it devolves upon the writer to dispel the clouds. The paragraph, whose critical words we emphasize by italics, is as follows:

"The infringer in this case is chargeable only for profits *actually made* and not for profits which it might have made. In ascertaining profits, the element of cost must enter —not merely the cost of manufacturing the part of the product sold, but the cost of manufacturing the *whole* product—and when the part of the product *unsold* is satisfactorily accounted for by the infringer, showing that it was not converted into money or other thing from which profits might properly be calculated, then the cost of producing the *whole* is set off against the returns from the sale of the *portion sold,* and a profit or loss is deduced."

This expression was not intended as a statement of abstract law applicable to all cases, but as a statement of law applicable to that case. What was that case?

[3] It was a suit for infringement of a patent for an apparatus and process of manufacture, not for an article of manufacture. Accordingly, the accounting was not for profits derived from infringing sales but for the infringing use of the patented machine and process. Primarily, the measure of prof-

its derived from an infringing use is the infringer's gain or saving, which in turn is determined by comparing the cost of production by the infringing use with the cost of production by another machine or process when such exists. This is known in the law as the "standard of comparison." When, as in the Continuous Glass Case, none exists, then the infringer's gain or saving is measured by the profits realized from the sale of the resultant product. As the plaintiff in that case could not show such profits by proof of its own, it called upon the defendant to disclose them. This the defendant did by tables of figures which both parties accepted as the bases for the accounting. These figures dealt with production quantities and costs and were so arranged by the infringing defendant as to show actual loss instead of profit. In order to do that, the defendant, quite aware that its finished glass product was the result of several manufacturing steps which had their beginning in molten glass batches, followed by an unfinished product called "unpolished wire glass" and completed by sheets of "polished wire glass," reckoned for manufacturing and commercial purposes not as separate articles but by square feet, disclosed its infringement as one general continuous operation. Whether this was the proper way to start and conduct an accounting was a matter with which this court was not then concerned, for it was accepted by every one, although it did venture an adverse comment on the method pursued. 219 F. 205. We are, however, now concerned to make the point that this was in fact the way it was done.

Of these tables two were important. The first had to do with unpolished glass and disclosed the square footage of glass of that kind made, used for polishing, sold, "on hand," and "unaccounted for." The item of 1950 feet of unpolished glass "on hand," whose cost of making had been deducted by the defendant itself from the total cost, promptly, and very properly, dropped out of the case.

The next table dealt with polished glass and gave the amounts made, sold, "on hand" and "unaccounted for."

The defendant, striving to show loss instead of profit, made a calculation based on the *two* items of *total* cost of production and cash return from sales. It was not possible to force a figure showing loss except by allowing the cost of glass "on hand" and glass "unaccounted for" (items included in the *total* cost) to stand against cash received from sales. The master did not allow this. Nor did the District Court which approved all the

master did on the issue of profits. Acting on the theory that for the defendant to maintain a credit for the cost of producing the whole it must show what it did with the whole, the master found that the defendant had "failed satisfactorily to account for a very considerable portion of the unpolished and polished glass, which it admitted to have produced, and upon the theory that an infringer must account for the disposition of all the product manufactured, held that, as it (the defendant) had credited itself in the total cost item of $26,085.99 with the cost of producing the unaccounted for portion, it was chargeable with a like amount as unaccounted for profits," and, accordingly, charged the defendant in the form of profits with the cost of polished and unpolished glass "unaccounted for" and *also* with the cost of polished glass "on hand" as glass similarly "unaccounted for" because it was proved that this glass was not waste— a cost properly chargeable to manufacture— and because the defendant did not prove what became of it. It was just here this court made the troublesome statement quoted.

When read with the context, it is clear that the paragraph refers directly, quite correctly, and exclusively to the defendant's infringing practices and its liability on its own showing. This is put beyond all doubt later in the opinion where it is seen that the master had added the footage "on hand" to the footage "unaccounted for" and treated their total as "unaccounted for" production. As the defendant had given itself credit for the cost of manufacturing both ingredients of this now enlarged "unaccounted for" item (which included polished glass "on hand"), the master held that it should be subtracted from the cost of manufacturing the *whole* in view of the fact, formerly found, that the defendant had not satisfactorily shown what had been done with it. Thus the master did *not* allow cost of glass on hand to be charged against the proceeds and profits of infringing sales. Nor did the District Court allow it. Nor did this court; for when the master, in correcting the defendant's calculation, took away this cost credit from the cost of total production, it left a profit which the District Court and later this court held was the defendant's gain in the infringing use of the patented machine and process.

From this extended review of its decision in the Continuous Glass Press Company Case we trust it is clear that this court did not go counter to the general trend of decisions on the subject and particularly to that of the Supreme Court in Callaghan v. Myers, 128

U. S. 617, 9 S. Ct. 177, 32 L. Ed. 547, which at the time was in the court's mind and was cited in the opinion on another point (219 F. 199, 205).

[4] Therefore we hold in the instant case that as the defendant was not charged with any profits on the lenses remaining on hand at the end of the infringing period, it cannot claim a credit for their cost of manufacture in reduction of profits derived from lenses sold.

[5] The defendant urged at the accounting, and again on this appeal, that it should be allowed as a debit against its profits derived from infringing sales a suitable sum to represent its actual investment, termed "interest on investment." We can see how such a question might arise had the learned trial court followed either the plaintiff's or the defendant's method of accounting; but as it followed a method of its own by taking the defendant's figure of forty cents as the factory cost, it may be reasonably assumed that the defendant in arriving at that figure included an item for its investment in the manufacturing plant which made the infringing product. However, there is no evidence on the point. Assuming without deciding the lawfulness of the item, we hold that the trial court committed no error in refusing to allow it in addition to the defendant's self-made figure of factory cost.

[6] During the infringing period the defendant paid federal income and excess profits taxes on the gains and profits of its general business. In doing so, it paid taxes on infringing profits. The defendant, at the accounting and before the District Court, claimed a deduction from infringing profits in the amount of taxes thus paid. Both master and court refused to allow it.

While federal courts have in rate cases allowed deduction of taxes in ascertaining the fair return on which a just and nonconfiscatory rate should be based (Consolidated Gas Co. of New York v. Newton [D. C.] 267 F. 231, 259; Newton v. Consolidated Gas Co., 258 U. S. 165, 42 S. Ct. 264, 66 L. Ed. 538; Galveston Electric Co. v. City of Galveston [D. C.] 272 F. 147, 162; Id., 258 U. S. 388, 399, 42 S. Ct. 351, 66 L. Ed. 678), the number of decisions dealing with the allowance of federal taxes in determining infringing profits in patent cases is, so far as we can find, limited to two. These are W. W. Sly Mfg. Co. v. Pangborn Corporation (D. C.) 276 F. 971; affirmed (C. C. A.) 284 F. 217, and L. P. Larson, Jr., Co. v. Wrigley (C. C. A.) 20 F.(2d) 830, 833, reversing Wrigley v. Larson,

Jr., Co. (D. C.) 5 F.(2d) 732, on the point.

For the rule against allowance of property taxes in reduction of infringing profits, the history of the departure from that rule and its advance to the present question of deducting federal taxes in determining infringing profits, we refer to the opinion of Judge Rose rendered in the Sly Case. Also to that opinion we refer for instances of perplexing difficulties which such an allowance naturally raises; yet to the reasoning of that opinion we subscribe, for it shows the duty of courts to meet those difficulties when they can and it demonstrates the practicality of sometimes administering equity in such cases.

In the case at bar no claim is made for damages arising from infringing sales. The claim is for infringing profits. This means profits actually made. A book profit of a dollar is not a profit actually made when from the dollar the government takes twenty cents as the price for the right to make any profit at all. The actual profit is what is left. An item which thus reduces an apparent profit and transforms it into an actual profit should, we think, be regarded a proper item of expense. It is a charge; and it is a very real one. Yet, because it is not at once ascertainable and therefore translatable into figures to be included in the final decree is not a good reason for disregarding it altogether. If it can ultimately be determined and reached in any practical way it should be considered. Judge Rose found and applied such a way. In the Sly Case, however, the court had the advantage of a fact situation which enabled it to allow the defendant a· deduction for a fixed sum for income taxes paid, and solved the uncertain element in the situation by decreeing that the defendant give the plaintiff a bond in that sum conditioned for payment to the plaintiff of the equivalent of whatever sum, if any, should be thereafter deducted from the taxes that the defendant would otherwise have to pay in any year in consequence of its payment of the amount of the decree.

As in the case at bar the trial court declined to allow a deduction of income and excess profits taxes as an expense incident to the production of infringing profits, it, of course, made no computation of actual profits remaining after such deduction. Not being able to determine from the record as it stands the exact sum representing federal taxes which belonged to the defendant's infringing business and which, we think, should be deducted in ascertaining infringing profits, we

are constrained to remand the case to enable the court to take testimony, if necessary, and make a recomputation of actual profits, based not on the plaintiff's theory or on the defendant's theory but on its own theory, by charging against or deducting from the infringing profits which it has already found in its final decree a portion of the income and excess profits taxes which the defendant has paid, computed in the ratio of infringing profits to the gross profits of the business, and to require the defendant, by bond in such amount as it shall name and with such security as it shall approve, to pay the plaintiff a like proportion of all moneys the government may refund to the defendant for taxes it has paid during the infringing period.

When modified in this particular, the decree of the District Court will in all respects be affirmed, the costs of the appeal and cross-appeal to be paid by the appellants respectively.